### LANSFORD v. GLOYD.

No. 11172—Opinion Filed May 8, 1923.

(Syllabus.)

1. **Appeal and Error—Review on Transcript —Damages for Breach of Contract to Buy Realty.**

In the trial of an issue of damages for breach of contract to purchase real estate, the possession of which has been surrendered to the purchaser, whether or not the reasonable rental value of the property during the time the same was occupied is a proper measure of damage for the breach of the contract cannot be reviewed by this court on a transcript, there being nothing to show whether the evidence tendered was objected to and exceptions saved to the ruling of the court.

2. **Vendor and Purchaser—Breach of Contract to Buy—Damages—Remedies.**

Whether or not a contract for the purchase of real estate which provides that in

event of the failure of the purchaser to make the payments in the time and manner provided therein, time being of the essence of the agreement, and which contract provides that in event of breach thereof the seller shall return monies and property deposited with him to guarantee the full performance of the agreement, is violative of sections 974, 975, and 976, Rev. Laws 1910, is not necessary to determine where, in the trial of the cause, the seller of the property is required by the court to account to the purchaser for all monies and properties delivered to him, and the same is offset against the damages sustained by the seller by reason of breach on the part of purchaser.

### 3. Same—Case.

G. made a contract with H. under which H. purchased a lot and the building located thereon, in Oklahoma City, agreeing to pay therefor, a certain portion of the purchase price each six months, to pay all taxes interest, repairs, insurance, and to keep the property clear of all liens. H. subsequently assigned said contract to L. Neither H. nor L. made the payments as provided in the contract. G. interpleaded in a suit, and asked for the cancellation of the agreement, for possession of the property, etc., on account of the failure of H. and L. to comply with the terms of the agreement. At the time of making the contract, H. deposited with G. certain monies and properties to secure the full performance of the contract, which monies and properties were, as provided by the agreement, to be retained by G. in event of breach by H., "as and for rent". The trial court in trying the issues required G. to account to H. for the monies and properties deposited with G., and offset the same against the damage to G. by reason of the breach. Held, that this was proper, and the allegation of the plaintiff in error, L., that there was a forfeiture of the monies and properties deposited with G. in violation of sections 974, 975, and 976, Rev. Laws 1910, is not supported by the journal entry of judgment found in the transcript, and there is nothing otherwise in the record to support the same.

### 4. Same — Contract to Convey — Equitable Title of Vendee.

A contract to convey at a future time certain real estate, on the performance by the purchaser of certain acts, and the payments, etc, provided therein, does not alone create an equitable title in the purchaser, but it is only when the purchaser performs or offers to perform the acts necessary to entitle him to the conveyance that he has such an equitable interest in the property as is the subject of foreclosure.

Error from District Court, Oklahoma County; James I. Phelps, Judge.

Action by J. U. Lamonte and another against Sidney Lansford, V. G. Hagaman, and S. M. Gloyd. From judgment for Gloyd on his corss-petition. Lansford brings error. Affirmed.

Pearson & Baird, for plaintiff in error.

Keaton, Wells & Johnston, for defendant in error.

BRANSON, J. The plaintiff in error appeals by filing in this court a petition in error and attaching thereto a transcript. The cause was entitled "J. U. Lamonte and J. H. Morgan, Plaintiffs, v. Sidney Lansford, V. G. Hagaman, and S. M. Gloyd, Defendants," in the district court. Both the plaintiff in error and the defendant in error were sued as defendants in the court below, and the matters here arose there by cross-petition. The plaintiff in error here will be referred to as the plaintiff, and the defendant in error here will be referred to as the defendant.

It is necessary to state briefly the facts out of which this lawsuit arose, in order to have the proper conception of the questions sought here to be presented by transcript merely.

Prior to and on the 22nd of January, 1918, the defendant was the owner and in possession of lots 15 and 16, block 7, according to the original plat of Oklahoma City, together with a building located thereon, known as the Gloyd building. One V. G. Hagaman, also a defendant in the court below, desiring to purchase said building, entered into a written contract with the said defendant, under which the defendant conditionally agreed, on completion of payment, to sell said property to the said Hagaman for the sum of $65,000. Said contract recited that the said building was incumbered by mortgage to the Equitable Life Assurance Society in the sum of $19,000 and interest; that said Hagaman was to take said property subject to said mortgage, and to pay the same according to the terms thereof; Hagaman should pay the defendant on July 22, 1918, the sum of $1,500 and interest, on January 22, 1919, the sum of $2,500 and interest, and $2,500 and interest each six months thereafter, provided that the whole purchase price of said property should be paid on or before January 22, 1923; that said Hagaman should pay all taxes for the year 1918 and subsequent years, should keep said property insured at his own expense, keep said property in good repair, pay cash for all improvements and repairs made on the buildings, pay all assessments of every kind and nature levied against said property, and hold the said defendant harmless

from all liability of every kind and nature on account of the use of the property, and for any accidents happening in or about the same. And that upon the said Hagaman performing all the obligations of the contract, and making all payments, specified, "it being specifically agreed that the time of making such payments is of the essence of this contract," then the said defendant obligated and bound himself to make a sufficient conveyance to the said Hagaman to said property; and the said Hagaman, at the same time and as part and parcel of the same transaction, conveyed to the said defendant a farm in Kay county, Okla., and certain interest in oil royalties, as said therein,

—"to further secure the performance of this contract. * * * If second party shall fail to make any of the payments to be made by him herein agreed to be made at the times specified, time being of the essence of this contract, then it is agreed that second party (Hagaman) will immediately deliver possession of said premises to the first party (Gloyd), and the first party is authorized to take possession of said premises, and the payments which second party shall have made to said first party, together with the real estate and oil royalty interested which second party has conveyed to the first party, shall be received and kept by the first party as and for the rent of said premises during the occupancy of the same by the second party."

The said Hagaman on March 26, 1919, assigned said contract to the plaintiff, Sidney Lansford. On April 2, 1919, said assignee, Lansford, let the said building to the plaintiffs in the court below, Lamonte and Morgan, the said plaintiffs executing to the said Lansford their notes aggregating $19,000, for rental on said building for a period of years. The said lessees, plaintiffs in the court below, ascertaining that the said Lansford and Hagaman had defaulted in their payments under their contract with the defendant, Gloyd, on April 11, 1919, instituted this suit in the district court of Oklahoma county, seeking a cancellation of the notes executed to the plaintiff, Lansford, and an injunction restraining Lansford from transferring the said notes or negotiating the same. The judgment in favor of Lamonte and Morgan is not appealed. The various defendants filed their answers and cross-petitions against their codefendants, the defendant Gloyd setting up the forfeiture of the contract by Hagaman and Lansford, setting out the various items of money and property conveyed to him by said Hagaman as a security for a full performance of the

terms of said agreement, showing the amount of money received from the farm sold under a written acquiescence of the said Hagaman and wife, the amount of money arising from oil royalties, the amount of money due him under the contract, the amount of monies paid out by him which should have been paid out by the said Hagaman or Lansford under said contract, and praying, first, for the cancellation of the contract and possession of the premises, and that title should be quieted in him against all parties, and, second, in the alternative, for judgment against Hagaman for the amount of his claim, and that the same be declared a lien upon the premises, and that the same be sold to satisfy the lien.

On June 16, 1919, the case came on for trial, the evidence was taken, and the court found and decreed that default had been made by the said Hagaman and Lansford in making the payments recited in the contract to the defendant Gloyd, and that judgment should be rendered in favor of Gloyd. Hagaman and Lansford insisted before the court that if they were given additional time, the payments could be made, and for that purpose the court suspended judgment from time to time, until the 29th day of July, 1919, when all parties to the litigation, present in court, stipulated to submit the cause on the proof taken at the hearing of June 16, 1919, and the judgment was entered by the trial court in the presence of all parties to the suit and their attorneys. After reciting those matters included in the contract, the court found:

"That reasonable rental for said premises from January 22, 1918, to and including July 22, 1919, is $500 per month, * * * and it was agreed in open court that such would be the reasonable rental thereof, and the court finds that the defendant Gloyd is entitled to damages for breach of said contract the amount of such reasonable rental value, which now amounts to the sum of $9,000, and is further entitled to be reimbursed for other payments of insurance, interest, taxes, repairs, and payments required to clear off the liens and such other expenses required to be paid to protect said property, and which should have been paid by Hagaman under the contract, and the court finds that upon full and careful accounting agreed to in open court as between Gloyd and Hagaman, by his attorney of record, E. L. Fulton, it was shown that defendant Gloyd has received from the contract (including the $3,500 received on sale of said farm land) the sum of $12,647.16, and has been required and obligated to pay out in taxes, insurance, discharge of lien, and other expenses, the sum of $11,936.75, exclusive of permanent

improvements, leaving a difference of $710.-41, which is a trust fund, to be held by the said Gloyd in trust to wait the further orders of the court. * * * That the oil royalties held by Gloyd should be held in trust, to await the further order of the court."

Later it is recited in the journal entry of judgment:

"Wherefore, it is considered, ordered, and adjudged that the said contract dated January 22, 1918, by and between S. M. Gloyd and V. G. Hagaman, relating to the sale of lots 15 and 16, block 7, Oklahoma City, Okla., is hereby adjudged and decreed to be null and canceled, and to be foreclosed, and the said V. G. Hagaman, Sidney Lansford, and each and all parties claiming by or under said parties, or any of them, are forever barred from any right, title, interest in and to said premises, and it is further adjudged that the said defendant S. M. Gloyd is the owner of said property, and has the full, legal, and equitable title thereto, and * * * is entitled to full and immediate possession thereof, free and clear of all liens, claims, or incumbrances on the part of the parties to this action, * * * and upon full **accounting**, it is adjudged and decreed that the said S. M. Gloyd shall hold the sum of $710.41 * * * subject to the order of this court."

The said sum is declared to be the balance due after a full accounting and agreement in open court on claim of V. G. Hagaman and S. M. Gloyd, and the said balance of $710.41, including a full settlement and application of the said $3,500, received by S. M. Gloyd on sale of the Kay county land—

"It is further ordered and decreed that upon the making of such payment of $710.47, and the surrender of such oil leases, whenever such payment or surrender is required by the court, the said S. M. Gloyd shall be released from any and all further liability to the parties of this suit concerning said contract dated January 22, 1918." .

It is from this part of the judgment as to the damages, sustained by Gloyd, the application of the oil lease royalty, granting the said Gloyd full possession of the premises and canceling the said contract, that this appeal is perfected by Sidney Lansford.

It will be noticed that Sidney Lansford is the assignee of Hagaman. The transcript discloses that all these parties were present in open court when this journal entry of judgment was entered, and when the stipulations and agreement as to the amount of the damages and, the rental value of the property were entered by the trial court.

The transcript fails to show that there was any exception to the journal entry of judgment taken by either party to this litigation, although the plaintiff in error was there represented by his attorney.

The assignments of error, general in their nature, but interpreted by reading the brief of plaintiff in error, are, first, that the judgment of the court enforced a penalty in violation of section 974, 975, and 976, Rev. Laws 1910; and, second, that the only judgment that could have been entered by the trial court under the pleadings, if entered for the defendant Gloyd at all, was by foreclosure of the equity created in favor of Hagaman by the contract and sale of the property with a deficiency judgment, in event it failed to bring the purchase price.

We fail to find anywhere any exception to the findings or judgment entered in this case, and fail to find any notice given in open court of the intention of the plaintiff in error to appeal. Session Laws of 1917, p. 403. We are therefore of the opinion that a dismissal of the appeal would not be amiss. For that the policy of the court is to dismiss appeals reluctantly, we will briefly notice the assignments of error.

To the point that judgment of the court enforced a penal provision, in violation of sections 974, 975, and 976, Rev. Laws 1910, in that the $3,500 proceeds of the farm, the oil royalties, etc., transferred and assigned by Hagaman to the defendant Gloyd, for the purpose of securing the performance of the contract, which were, under the terms of said contract, to be retained by Gloyd, in event of breach of the contract, "as and for rental."

On this point, plaintiff says a forfeiture is odious to the law. That upon the breach of all contracts containing provisions such as here, where it is practicable to award the actual damages a party to the contract has suffered by reason of the breach thereof by the other party, the damages should be ascertained, and no loss in the nature of a forfeiture should be adjudged or decreed against the defaulting party to the contract, and cites section 2844, Rev. Laws 1910, to the effect that he who breaches a contract may be relieved from a forfeiture by reason thereof upon making full compensation to the other party, etc. To the case, the contention of the plaintiff in error is that the terms of this agreement and the subject-matter of the agreement are of such a nature that damages to the defendant Gloyd were easily ascertainable in event of breach, and that being so, they could not contract

as to liquidate damages called "rent" or otherwise in event of the breach, under the statute; and that the stipulation and provision of the contract in question, to the effect that in event of the failure of the said Hagaman to perform each and every provision thereof, time being of the essence of the agreement, the said farm and the oil royalties should be retained by the said defendant Gloyd as and for rent, was a penalty.

Forfeitures are odious so the law, whether sought under the guise of rent or otherwise and liquidated damages can only be agreed upon in event the ascertainment of the actual damages is impossible or exceedingly impracticable. We fail to see that the propositions of law fit into the questions herein involved, as disposed of by the trial court. The trial court allowed no forfeiture or penalty. The only thing now before this court is the pleadings and the findings of the trial court as shown from the journal entry of judgment. This journal entry of judgment shows in detail an accounting had as to all the properties received by the defendant Gloyd, and the monies arising therefrom which amount to $12,647.16, and then finds that the amount the said Gloyd has been required and obligated to pay out which the said Hagaman should have paid, plus the damages, is $11,936.75, leaving a difference of $710.41, which was later paid by defendant to the court clerk to await order of proper disbursement.

But the plaintiff in error says that in these items of account there was $500 a month allowed the defendant Gloyd for rent on the premises and for the building during the 18 months the same was in the possession of the said Hagaman and the plaintiff. In support of this contention, counsel for plaintiff cite section 2859, Rev. Laws 1910, wherein it is provided:

"The detriment caused by breach of an agreement to purchase an estate in real property is deemed to be the excess, if any, and the amount which would have been due to the seller under the contract over the value of the property to him."

Declining to either concede or deny that in a proceeding of this sort the contention of the plaintiff in error as to the measure of damages set forth in the statute would be the correct one, we are at a loss to see on what theory of the law this court could reverse the judgment of the lower court on this account, even if the correct measure of damages was not applied. There was no exception saved thereto, and no proper error predicated thereon. The journal entry of judgment recites that the plaintiff in error was represented by counsel at the time the judgment was entered, and "it was agreed in open court that such ($500 a month) would be a reasonable rental thereof, and the court finds that the defendant Gloyd is entitled to damages for breach of said contract in the amount of such reasonable rental value, which now amounts to the sum of $9,000," etc. There is nothing before this court showing any objection by plaintiff in error to this measure of damages, and no exceptions to the evidence in support thereof, or the apparent agreement conceding the amount; but, on the contrary, the only reasonable inference from the journal entry is that the plaintiff conceded this measure of damages as the proper one.

The second assignment of error, as interpreted by the brief, means that the only judgment that the court could have rendered was foreclosing the equity of Hagaman in the premises and ordering the sale thereof to pay amount. We cannot agree that there is any proper foundation for this, under the status of contract in question at filing of the suit. In the case of Bartlesville Oil & Improvement Co. v. Hill, 30 Okla. 829, 121 Pac. 208, the court, after quoting from numerous authorities, says:

"In Warvelle on Vendors (2d Ed.) sec. 176, the doctrine of Chappell v. McKnight, supra, is reannounced and approved. It is there said: 'The essential feature of an equitable title is that it is one which appeals to equity for confirmation and enforcement. Hence a mere contract or covenant to convey at a future time on the purchaser performing certain acts does not create an equitable title. It is only when the purchaser performs or tenders performance of all the acts necessary to entitle him to a deed, that he has an equitable title and may compel a conveyance.' * * * Under the plain and unambiguous terms of the original contract, we must conclude that Lewis obtained only a right to purchase upon full performance of the terms and conditions imposed; that, neither he nor his assigns having performed these conditions, as expressly provided by the terms of the contract, no estate ever passed to either of said parties, and consequently defendant in error has no title, right or equity in the subject of foreclosure, unless it be that, on account of the conduct, laches, or some act of plaintiff in error, some such right should exist. We have carefully read the record, and fail to find that plaintiff in error has in any respect waived the rights retained by it under its contract"

—and under this authority and the cases therein cited, we are of the opinion that there was no such equity owned by reason

of the contract or the performance of any part thereof, shown by the transcript, which gave to either Hagaman or the plaintiff, Lansford, any equity in the property, which required a foreclosure thereof, as contended by plaintiff. We think, under the findings in the journal entry of judgment, that the judgment and decree cannot be reversed upon this assignment of error. 27 R. C. L., Vendor and Purchaser, secs. 165 and 353; 39 Cyc. pp. 1873, 1874.

We fail to find anything in the assignments of error presented on which this court would be warranted in reversing the judgment of the trial court. The same is therefore affirmed.

JOHNSON, C. J., and McNEILL, KANE, KENNAMER, NICHOLSON, COCHRAN, HARRISON, and MASON, JJ., concur.