## PARKS v. CLASSEN CO.

No. 21779. Opinion Filed Feb. 23, 1932.

Rehearing Denied March 29, 1932.

J. H. Hildreth, E. E. Blake, and C. W. Clift, for plaintiff in error.

Keaton, Wells, Johnston & Barnes, for defendant in error.

RILEY, J. On March 10, 1930, plaintiff in error commenced this action against defendant in error for a specific performance of a contract to sell and convey certain real

estate being described as lot A, block 8, Reno avenue addition to Oklahoma City, Okla.

The contract was between plaintiff and one J. L. Trentman. The latter is alleged to have been the agent, representative, or trustee for defendant, holding the legal title to said property for defendant and acting for it in platting and selling the lots in said addition. The contract was dated August 20, 1921, and in part provides:

"This agreement witnesseth: That J. L. Trentman of Wichita, Kan., hereinafter designated as the seller, hereby agrees to sell and convey to Geo. Parks, of O. C. Okla., hereinafter designated as the buyer, upon the terms and conditions hereinafter expressed."

Then follows the description of the lot.

The agreed price was $550, payable $25 cash, then $8 per month in advance until the purchase price was paid in full without interest for the first two years. After first two years all deferred payments then remaining unpaid were to bear interest at six per cent. per annum payable semi-annually. The seller was to pay all state and county taxes up to and including the year 1920. Buyer was to pay all taxes and assessments, if any, thereafter as same became due and payable.

The contract further provided:

"It is agreed that when the said purchase price and all special assessments or taxes, should any be levied, have been paid, the seller will execute to the buyer a warranty deed, conveying said lot free and clear of all incumbrance, together with a printed copy of an abstract brought down to date and certified to by a reputable abstractor. * * *

"Fourth: It is agreed that in event the buyer shall be sick, and on that account unable to follow his usual vocation, and shall furnish the certificate of a practicing physician as to such sickness, satisfactory to the seller, the weekly payments shall be suspended during the continuance of such disability, but in no event shall such payments be suspended at any time for more than eight (8) consecutive weeks.

"Fifth: If such special assessments be not paid when due, or if the weekly or monthly payments shall be more than eight weeks delinquent (except in cases of sickness, as hereinbefore provided), the seller may, at his option, either declare the entire balance of the purchase price due and collectible, or he may rescind this contract to sell and convey said lot or lots and take possession thereof at his option; and in the event of such rescission, all payments already made by the buyer shall be taken and retained by the seller, not as penalty, but as and for liquidated damages for the breach of this contract, but failure or delay to exercise said option at the time of any default shall not be or operate as a waiver of the right to exercise such option, at any time thereafter at his option."

The petition alleged the execution of the contract and the payment by plaintiff of the $25 cash, and that plaintiff went into immediate possession of the lot and made valuable improvements thereon. Other payments are alleged to have been made as follows:

"Plaintiff alleges that payments were made upon said contract at the time and in the amount as shown by the indorsements upon said contract which is hereto attached as 'exhibit A,' and the payments are hereby referred to and made a part of the allegations of this petition as though set out herein."

The indorsements on the contract referred to are not clear as to how much was paid or when the payments were made. The first payment indorsed is for $4, September 19, 1921. Other payments were made at irregular intervals of from four to twelve weeks, and in sums ranging from $4 to $8, down to February 5, 1923. Other payments are indorsed which appear to have been made upon other or different contracts and upon their cancellation were credited upon this one. The last payment of $8 appears to have been made April 19, 1923, and the total sum paid as shown by the indorsement on the contract, including the initial payment of $25, is $180.50.

The petition further alleges:

"Plaintiff further alleges that said payments were made and receipted for by the said J. L. Trentman, or his authorized agent from time to time, which said payments were credited upon said contract the various dates shown by said indorsements, and plaintiff alleges that the acceptances by the said J. L. Trentman of said payments at the times said payments were made was a waiver by the seller mentioned in said contract of the strict provisions thereof. * * *

"Plaintiff further alleges that during the year 1923, the land above described was flooded and all the improvements which had been placed thereon by this plaintiff, consisting of house, barn, and outbuildings, were washed away, and since said time there has been no improvements placed upon said property, but plaintiff alleges that at all times herein mentioned plaintiff utilized said ground for garden purposes."

It is then alleged that neither defendant nor Trentman had at any time notified plaintiff of any intention on their part to rescind

the contract, and that the contract had never been terminated by agreement of the parties.

It is then alleged that on the _____ day of February, 1930, plaintiff tendered to defendant, in cash, an amount sufficient to cover all delinquent payments, with interest thereon, and all taxes paid by defendant, and demanded a deed of conveyance to plaintiff, and that defendant refused to accept the same and deliver the deed. In his petition plaintiff offers to pay into court any sum which may be determined to be due and owing on the contract, including interest thereon and any taxes, if any, paid by defendant.

Defendant demurred to the petition upon the grounds:

"* * * That same does not constitute a cause of action in favor of the plaintiff and against the defendant; and for the further reason that said amended petition shows upon its face that the last payment made by the plaintiff was made on April 19, 1923, almost seven years ago; that said petition shows upon its face that cause of action set out by the plaintiff is barred by laches."

The demurrer was sustained, and plaintiff electing to stand upon his petition, judgment was rendered for defendant, and plaintiff appeals. After the petition in error was filed, E. E. Blake, C. W. Clift, and Neil J. Baker were, on their motion, made parties plaintiff in error.

Plaintiff first contends that by the contract he became the equitable owner of the lot, or, as sometimes expressed, the holder of the equitable title thereto. Defendant contends that by the contract alone plaintiff did not become the equitable owner or the holder of such equitable title as would require a foreclosure.

Plaintiff in support of his contention cites Dunn v. Yakish, 10 Okla. 388, 61 P. 926, and a number of later cases, which he says sustain his contention. The rule contended for is stated as:

"Equity treats things agreed to be done as actually performed, and when real estate is sold under a valid contract, the purchase money to be paid in part and the deed executed at a future day, the equitable title passes at once to the vendee, and equity treats the vendor as a trustee for the purchaser of the estate sold, and the purchaser as a trustee of the purchase money for the vendor."

Plaintiff then quotes a portion of the fourth paragraph of the syllabus in the above case which reads:

"The whole foundation of this doctrine of equity is that the equitable title and interest passes by the contract of sale, and from the time of its execution and it contemplates delivery of possession as well as payment of purchase money and a conveyance at a future period."

But when the whole paragraph is read in connection with the contract there under consideraton, it will be seen that the contract was entirely different from the one here involved. It shows that the contract read that the vendor "has this day sold and agreed to convey." In the body of the opinion Chief Justice Burford, speaking for the court, in explaining the effect of the language used in the contract, says:

"The contract recites that the party of the first part has 'this day sold and agreed to convey.' The sale is in praesenti; the agreement to convey is in futuro; by the sale the equitable title at once passes to the vendee; the vendor retains the naked legal title, which he agrees to convey at a future day."

The portion of paragraph 4 of the syllabus not quoted above reads:

"Where the language of a contract is that the vendor 'has this day sold and agreed to convey' to the vendee his 'building and lot,' it clearly imports a binding contract of sale then executed and consummated. By such terms the title in equity passes from the date of the contract. The contract is not for a sale, but only for a conveyance at a future day."

It is clear that the words used in the contract, namely, "has this day sold," are the basis for the holding that by the contract itself the title in equity passed from the date of the contract.

A different rule appears to apply where the words "hereby agrees to sell and convey * * * upon the terms and conditions herein expressed," or words of similar import are used.

In Lansford v. Gloyd, 89 Okla. 232, 215 P. 198, it was held:

"A contract to convey at a future time certain real estate, on the performance by the purchaser of certain acts, and the payments, etc., provided therein, does not alone create an equitable title in the purchaser, but it is only when the purchaser performs or offers to perform the acts necessary to entitle him to the conveyance that he has such an equitable interest in the property as is the subject of foreclosure."

In Nicholson v. Roberts, 144 Okla. 116, 289 P. 331, the words employed in the contract were:

"Parties of the first part hereby agree to sell and convey unto the parties of the second part, and the parties of the second part hereby agree to purchase from the parties of the first part."

In speaking of the effect of the contract it was said:

"As no character of title had vested in the defendants under the terms of the contract, the same being for a transfer of title in the future. (Lansford v. Gloyd, 89 Okla. 232, 215 P. 198), there was nothing in the case to call for a test of the strength of plaintiffs' title as against their adversaries."

The court, in Bartlesville Oil & Improvement Co. v. Hill, 30 Okla. 829, 121 P. 208, quotes with approval from Chappell v. McKnight, 108 Ill. 570, the following:

"A mere contract or covenant to convey at a future time on the purchaser performing certain acts does not create an equitable title. * * * When the purchaser performs all acts necessary to entitle him to a deed, then, and not until then he has an equitable title. and may compel a conveyance. (Bispham's Equity, sec. 365). When the purchaser is in a position to compel a conveyance by a bill in chancery, he then holds the equitable title. Before that he only has a contract for a title when he performs his part of the agreement. Baldwin v. Morey, 41 La. Ann. 1105, 6 So. 796; Smith v. Jones, 21 Utah 270, 60 P. 1104."

A number of cases are cited by plaintiff wherein vendees were held to be equitable owners under contracts for the sale of real estate, but we find none which holds directly that a contract for a sale of real estate in futuro of itself creates an equitable title in the vendee.

We hold that the plaintiff did not, by virtue of the contract, become the equitable owner of the lot in question. Therefore no action was necessary to foreclose any equitable interest in the lot. The above authorities show that the rule is that under a contract such as here, it is only when the purchaser performs or tenders performance of all the acts necessary to entitle him to a deed that he has an equitable title and may compel a conveyance.

The petition on its face shows that plaintiff failed for nearly seven years to make the payments necessary to put him in a position to demand conveyance, but he contends that inasmuch as the contract provided that should the monthly payments become delinquent for more than eight weeks (except in case of sickness which was especially provided for) the seller might, at his option, declare the entire balance of the purchase price due and collectible or might rescind the contract to sell and convey, and take possession, and defendant having done neither prior to the final tender made by plaintiff, that plaintiff is now entitled to the conveyance notwithstanding the delay.

The question then arises within what time may tender of payment be made so as to entitle the buyer to the right to compel conveyance. The plaintiff contends that this may be done at any time before defendant takes action toward the exercise of the option provided in the contract. On the other hand, it is asserted by the defendant that it appears from the petition itself that plaintiff failed for nearly seven years to pay as provided in the contract and failed for three years after the last payment fell due to make the tender; that the petition shows upon its face that plaintiff was and is guilty of laches, and for this reason the petition does not state a cause of action and the demurrer was properly sustained.

The real question presented, then, is whether or not the petition showed on its face that the plaintiff was guilty of such laches as would defeat his claim of right to specific performance.

Laches in general is defined as neglect for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done. In a more specific sense it is inexcusable delay in asserting a right; an implied waiver arising from knowledge of existing circumstances and an acquiescence in them; such neglect to assert a right as taken in conjunction with lapse of time more or less great, and under circumstances causing prejudice to an adverse party, operates as a bar in a court of equity; such a delay in enforcing one's rights as works disadvantage to another. 21 C. J. 210. It is the general rule that laches or staleness of demand constitutes a defense to the enforcement of the right or demand so neglected. It being a defense, a serious doubt arises whether the question of laches may be raised by demurrer. Defendant in its brief admits this, but asserts that it may be raised where the petition shows upon its face that plaintiff has been guilty of laches. Such may be the case, but the question still remains whether or not the petition in the instant case so shows.

While lapse of time is an important element of laches, yet unless a case falls within the operation of the statutes of limitation there appears to be no fixed period within which a person must assert his claim or be barred by laches. Laches, unlike lim-

itations, is not a mere matter of time, but depends largely on the circumstances of the particular case and is principally a question of the inequity of permitting a claim to be enforced, an inequity arising out of some intermediate change of conditions.

Again, whether the doctrine of laches applies fully depends largely upon the right asserted, the character of the relief sought and the nature of the proceedings to which resort is had. In reference to the nature of the right asserted and the relief sought there is a well-recognized distinction between two classes into one or the other of which all cases fall. 21 C. J. 215.

The one includes the cases wherein protection is sought against a violation of a present vested property right, or what is sometimes termed executed right.

The other class includes those cases in which plaintiff's right is not vested, but lies in action and it is necessary to resort to a court of equity to invest plaintiff with the right claimed. This kind of right has been termed "executory." Such would appear to be the claim of plaintiff in the instant case. In the latter cases the doctrine of laches applies fully and in order to obtain relief in equity plaintiff must bring his action without unreasonable delay.

In Hogan v. Kyle (Wash.) 35 P. 399, the decree of the trial court was reversed upon the ground that defendant's demurrer to the complaint should have been sustained and the decision was based upon the proposition that plaintiff was guilty of laches.

In Knox v. Spratt (Fla.) 6 So. 924, one of the grounds for holding that the demurrer to the complaint should have been sustained was the failure to commence the action for about two years and seven months and no reason shown for the delay in filing the plea.

That the petition showed upon its face that plaintiff was guilty of laches was one of the grounds upon which it was held that a demurrer should be sustained in Seculovich v. Morton (Cal.) 36 P. 387, and also in Fowler v. Sutherland (Cal.) 9 P. 674.

But when the doctrine of laches is considered in its true sense, it plainly appears that it is purely defensive, and whether or not it is applicable depends upon the facts and circumstances of the particular case.

In Chase v. Chase, 20 R. I. 202, it is said:

"Laches in legal significance is not mere delay, but delay that works a disadvantage to another. So long as the parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no steps to enforce them until the condition of the other party has in good faith become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable and operates as estoppel against the assertion of the right. The disadvantage may come from loss of evidence, change of title, intervention of equities and other causes; but when a court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief."

Pomeroy on Equity Jurisprudence, vol. 5, sec. 21, in commenting on the definition of laches in the above case, states:

"The true doctrine concerning laches has never been more concisely and accurately stated."

There being no fixed or settled standard by which the doctrine of laches can be applied in all cases, the question as to what delay or extent of time will constitute laches cannot be determined by strictly legal process, but must be determined by the facts in each particular case. If under all the facts it appears that a defendant has been put to a disadvantage on account of the delay of plaintiff, by loss of evidence, change of title, intervention of equities or other causes, or if as suggested by defendant in his brief, the lot was practically worthless after the great floods of 1923, and remained so until the discovery of the great oil fields near the city, about the time or shortly before plaintiff decided to assert his claim and tender the balance due and demand a deed, on account of which the lot was suddenly increased in value to an amount far in excess of the delinquent payments and interest thereon and all taxes, etc., then a court of equity would be justified in applying and should apply the doctrine of laches and deny specific performance. But these are matters that can only be determined upon a hearing and development of facts and may not be assumed.

Where laches appear on the face of the petition, advantage thereof may be taken by demurrer, but conceding that, under the maxim "equity aids the vigilant," laches may arise from an unexplained delay short of the period fixed by the statute of limitations, still laches will not be presumed from such delay alone. It must be made to affirmatively appear that unusual circumstances exist on account of such delay which render specific performance inequitable. When such circumstances do not appear from the face of the petition, they must be

pleaded by answer to be available. Brundy v. Canby (Mont.) 148 P. 315.

Such unusual circumstances as would render specific performance inequitable do not appear upon the face of the petition in the instant case, and the demurrer should be overruled.

The judgment is reversed and the cause is remanded, with directions to overrule the demurrer without prejudice of the rights of defendant to answer and for further proceedings not inconsistent with the views herein expressed.

LESTER, C. J., and HEFNER, CULLISON, ANDREWS, McNEILL, and KORNEGAY, JJ., concur. CLARK, V. C. J., and SWINDALL, J., absent.