## SUTTON v. COMMISSIONER OF INTERNAL REVENUE.

### No. 1610.

Circuit Court of Appeals, Tenth Circuit.

March 31, 1938.

Walter G. Moyle, of Washington, D. C. (John G. Harlan, Ernest L. Wilkinson, Stanley A. Suydam, and Ralph P. Wanlass, all of Washington, D. C., on the brief), for petitioner.

Warren F. Wattles, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before LEWIS, PHILLIPS, and WILLIAMS, Circuit Judges.

PHILLIPS, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals.

James A. Crews and Lula Crews, his wife, died in 1909 and 1910, respectively. They left surviving them as heirs at law six minor children, Ralph W., Charles, Robert E., Everett J., Mary and Amy Crews, who acquired by inheritance from their parents

240 acres of land situated in Garfield County, Oklahoma, in what is now known as the Garber Oil Field. Laura E. Crews was duly appointed guardian of the minor children. On February 21, 1916, Laura E. Crews, as guardian, executed an oil and gas lease covering the above-mentioned land to one G. A. Garber. By successive assignments the lease passed in turn to the Chanute Refining Company, Garfield Oil Company, Exchange Oil Company, and finally on January 9, 1922, to the Sinclair Oil and Gas Company.

On September 5, 1921, Ralph W. and Charles Crews, who had reached their majority, and Laura E. Crews, as guardian of the other four heirs who were still minors, entered into a contract with W. W. Sutton, an attorney at law. The contract recited that the Crews heirs had employed Sutton as an attorney at law to institute and prosecute in their behalf a suit to cancel the lease as to the undeveloped portion of the leased premises. Under the contract the Crews heirs agreed that they would pay all costs of litigation and the personal expenses incurred by Sutton in connection therewith and, "in the event the lease or any portion thereof" should be cancelled "through the effect of" such suit, that they would convey to Sutton a 3/32nd "undivided interest in and to all oil, gas and other mineral production upon said land." The contract further provided that in the event no portion of the lease should be cancelled, set aside or released "through the effects of said suit" the Crews heirs should not be obligated to pay Sutton anything for his services.

On September 10, 1921, Sutton instituted a suit in the district court of Garfield County, Oklahoma, numbered 5464 on the docket of such court, in behalf of Laura E. Crews, as guardian of the four minor children, and Ralph W. and Charles Crews, as plaintiffs, against the Exchange Oil Company, as defendant, to cancel the lease for breach of implied covenant to drill offset wells. On the original petition Sutton noted this statement, "Lien claimed. W. W. Sutton. Atty. for Plffs." The litigation thus commenced continued until October 18, 1930, when a compromise was effected.

In 1922 the adult Crews heirs and the minor heirs acting through their guardian, doing business under the name of Crews Estate Oil and Gas Producers, hereinafter called Crews Estate, commenced drilling operations on the undeveloped portion of the leased premises. When the operations reached the production stage, the Crews Estate entered into an agreement to sell the oil produced to the Garber Refining Company. The first oil was run on or shortly prior to June 1, 1922, and pursuant to the direction of the Crews Estate statements were furnished to Sutton on June 6 and June 15, 1922, respectively, showing his 3/32nds interest in the gross production of oil and on those dates he received as his share of the oil runs, payments aggregating $1,453.99.

The Sinclair Company notified the Garber Company that it claimed title to 7/8ths of the proceeds from the sale of the oil produced by the Crews Estate and that it would hold the Garber Company liable for payments made to the Crews heirs and Sutton in excess of 1/8th of the gross proceeds. In order to protect the several parties against possible future liability the Crews Estate and the Garber Company on June 13, 1922, entered into a contract by which they agreed that 7/8ths of the gross proceeds received from the oil produced by the Crews Estate, less operating expenses, should be deposited in escrow in the Farmers State Bank at Garber, Oklahoma, pending final determination of the litigation. The Bank accepted the escrow agreement and the proceeds were deposited in the bank pursuant to such agreement and the Garber Company continued to send statements of the oil runs to the Crews heirs and Sutton setting forth their individual shares.

Sutton reached the conclusion that the lease was void because the requisite procedure to authorize the making and execution thereof was not followed in the county court of Garfield County. Accordingly, on March 28, 1922, he filed an amended petition in cause No. 5464 in which he joined the Garfield Oil Company and the Sinclair Company as parties defendant, and prayed an accounting for all the oil and gas removed by the oil companies from the leased premises. A claim of lien was also noted on the amended petition.

On June 7, 1923, the Crews heirs and Sutton entered into a supplemental contract in which it was agreed that for the services to be rendered by Sutton in the accounting feature of the case he should receive 25 per cent of the amount collected from the defendants on account of the oil and gas removed from the leased premises.

On July 26, 1924, the district court of Garfield County held the lease to be void ab initio because the requisite procedure for

authorizing the making and execution thereof had not been followed in the county court of Garfield County and awarded judgment in favor of the Crews heirs in the sum of $965,149.62 with interest and costs. On appeal the Supreme Court of Oklahoma affirmed the judgment as to three of the heirs who were still minors and reversed it as to the other heirs on the ground that they had affirmed the lease by accepting royalties thereunder after attaining their majority. Exchange Oil Co. v. Crews, 134 Okl. 229, 273 P. 228.

On February 28, 1929, the district court of Garfield County, purporting to act pursuant to the mandate and direction of the Supreme Court, entered its decree by which it awarded the minor heirs judgment against the defendants for $559,094.34 with interest and costs, in cause No. 5464, and adjudged the lease to be void as to such minor heirs, that Sutton was entitled to receive 25 per cent of the moneys to be collected from the defendants, and that Sutton "under his said contracts, has a three-thirty-second (3/32) interest in one-half of all of the oil, gas and other minerals produced and to be produced from" the leased premises and ordered and directed the minor heirs to convey to Sutton 3/32nds of their entire undivided one-half interest in the mineral rights in such leased premises. The court fixed the amount of the supersedeas bond at $1,420,000.00, gave the defendants 30 days from February 28, 1929, in which to execute and file the supersedeas bond, and stayed the execution of the judgment until March 30, 1929.

Following the entry of the judgment the oil companies appealed naming Sutton as party defendant. Within the period fixed by the court they gave a supersedeas bond staying the judgment. Sutton moved to dismiss the appeal on the ground that he was not a defendant. The Supreme Court denied his motion.

As a result of negotiations for compromise of the litigation carried on in 1930 the Crews heirs, Laura E. Crews, as guardian, and Sutton, on October 11, 1930, entered into a written contract whereby the Crews heirs agreed to pay and Sutton agreed to accept $150,000.00 as his share of the funds to be received in the contemplated compromise of the litigation and in full settlement of all claims against the Crews heirs, provided the compromise was effected within 30 days from the date of the agreement, and Sutton agreed to release his interest in the mineral rights in the leased premises and the mineral production therefrom in the event of such compromise.

On October 17, 1930, Sutton executed and delivered to the Crews heirs an instrument in writing whereby he released, cancelled, assigned and quitclaimed unto the Crews heirs all his right, title and interest in and to the contracts of September 5, 1921, and June 7, 1923, and released and discharged the leased premises "from the provisions of" such contracts and his attorney's lien.

On October 18, 1930, a contract of settlement was entered into between the Sinclair Company and the Crews heirs and Sutton, whereby the Sinclair Company agreed to deposit in the Exchange National Bank of Tulsa, Oklahoma, the sum of $375,000.00, $355,000.00 of which was to be distributed to the Crews heirs and Sutton and $20,000.00 held pending determination of certain claims, in accordance with a letter of instruction dated October 18, 1930, and addressed to the Exchange Bank, upon the satisfactory execution and delivery in escrow to the Exchange Bank of certain contracts, stipulations and other instruments. The stipulations provided for a confession of error in the appeal pending in the Supreme Court and a consent judgment to be entered in the district court validating the lease. The terms and conditions of the escrow agreement were in all respects complied with. The lease was continued in effect and the Sinclair Company was recognized as the true owner thereof and Sutton received in the year 1930 the sum of $150,000.00 from the funds paid in compromise of the litigation.

During the year 1930 Sutton kept his books and made his income tax return on the basis of cash receipts and disbursements. In his return he reported the $150,000.00, less $41,250.00 claimed as depletion. The Commissioner disallowed the depletion claim and held that the entire $150,000.00 was ordinary income to Sutton during the year 1930 and subject to both normal and surtax rates. A deficiency of $9,819.87 was proposed.

Sutton appealed to the Board of Tax Appeals for a redetermination of his income taxes for the year 1930.

He asserted that he had acquired a vested economic interest in the oil and gas production from the Crews land by reason of his contracts of employment and his statutory lien under the laws of Oklahoma and

for that reason was entitled to a depletion allowance in the year 1930.

He further contended that if any portion of the $150,000.00 received by him in such settlement represented a consideration for the release and quitclaim of his right to share in the proceeds of future production of oil and gas from the leased premises, then he was entitled to be taxed at capital net gain rates on such portion of said income since his interest had been held by him for a period of more than two years.

The Board rejected Sutton's contentions and held that the $150,000.00 was ordinary income derived from services for the year 1930 and subject to normal and surtax rates for that year.

The original contract expressly provided that Sutton was to receive a conveyance of 3/32nds of the mineral rights in the leased premises only "in the event the lease or·any portion thereof" should be "cancelled through the effect" of the suit, and that in the event no portion of the lease should be cancelled "through the effects of said suit" Sutton should receive nothing for his services.

The supplemental contract expressly provided that Sutton should receive 25 per cent of the amount collected from the defendants for oil and gas extracted from the leased premises.

It is clear, therefore, that Sutton's right to receive a conveyance of an interest in the mineral rights in the leased premises was conditioned on a future event, namely, a cancellation, as result of the suit, of the lease or a portion thereof and his right to receive compensation for services in prosecuting the claim to recover money for oil and gas extracted from the leased premises was contingent on recovery.

In support of his contention that he acquired under the original contract a vested interest in the mineral rights Sutton relies upon Lashley v. Moore, 112 Okl. 198, 240 P. 704, 706, wherein the court said:

"The other alternative, 'and in case the land is recovered, first party covenants and agrees to make, execute, and deliver to said second party a good and sufficient warranty deed, conveying an undivided one-half interest in and to said lands above described,' is an agreement to convey an interest in the subject-matter of the litigation, or the res, subject to the condition subsequent that plaintiff perform the services successfully. When the contract is construed also in the light of the circumstances pleaded, it was an agreement by Haynes to so convey to plaintiff such interest in the land, owned in presenti by Haynes, subject to such condition subsequent. * * *

"According to the allegations, plaintiff performed and tendered performance of all acts necessary to entitle him to a deed from Haynes, and was prevented therefrom by defendants. In equity, the contract thus operated as a conveyance to the plaintiff of such undivided one-half interest in the land, contingent upon the performance by plaintiff of his obligations under the contract."

Sutton asserts that under the doctrine announced in this case where A, the owner of land, contracts to convey the same to B at a future date upon the performance of certain acts or conditions by B, B acquires a present equitable interest in the land subject to defeasance by the nonperformance of a condition subsequent.

If the language quoted from Lashley v. Moore, supra, stood alone it would afford much support for Sutton's contention. However, the court in Lashley v. Moore, supra, quotes with approval from the opinion in the earlier case of Lansford v. Gloyd, 89 Okl. 232, 215 P. 198, as follows:

"In Warvelle on Vendors (2d Ed.) § 176, the doctrine of Chappell v. McKnight [108 Ill. 570], supra, is reannounced and approved. It is there said: 'The essential feature of an equitable title is that it is one which appeals to equity for confirmation and enforcement. Hence a mere contract or covenant to convey at a future time on the purchaser performing certain acts does not create an equitable title. It is only when the purchaser performs or tenders performance of all the acts necessary to entitle him to a deed that he has an equitable title and may compel a conveyance.' "

Lansford v. Gloyd, supra, followed the earlier case of Bartlesville Oil & Improvement Company v. Hill, 30 Okl. 829, 121 P. 208, 211, where the court quoted with approval from Chappell v. McKnight, 108 Ill. 570, as follows:

" 'A mere contract or covenant to convey at a future time on the purchaser performing certain acts does not create an equitable title. It is but an agreement that may ripen into an equitable title.' When the purchaser performs all acts necessary to entitle him to a deed, then, and not until then, he

has an equitable title, and may compel a conveyance. Bispham's Equity, § 365. When the purchaser is in a position to compel a conveyance by a bill in chancery, he then holds the equitable title. Before that he only has a contract for a title when he performs his part of the agreement.' Baldwin v. Morey, 41 La.Ann. 1105, 6 So. 796; Smith v. Jones, 21 Utah 270, 60 P. 1104.'"

It will be observed that in Lashley v. Moore, supra, the plaintiff had either performed or tendered performance of all the acts necessary to entitle him to a deed and under the doctrine announced in the earlier Oklahoma cases, his contract, at the time of the commencement of the action, had ripened into an equitable title.

In view of the factual situation presented in Lashley v. Moore, supra, and its express approval of the doctrine announced in the earlier Oklahoma cases, we are of the opinion that Lashley v. Moore, supra, should be construed as holding that such a contract ripens into an equitable title on performance or tender of performance of the stipulated acts or conditions and not that it creates an equitable title in its inception. On the other hand, if Sutton's construction of the opinion be correct then it must be regarded as having been overruled by three later decisions of the Supreme Court of Oklahoma which expressly lay down and approve the doctrine announced in the Oklahoma decisions which preceded Lashley v. Moore, supra. See Parks v. Classen Company, 156 Okl. 43, 9 P.2d 432, 434; Id., 174 Okl. 237, 49 P.2d 1101; and Bradford v. Jones, 170 Okl. 636, 41 P.2d 857, 859.

■ In the first opinion in Parks v. Classen Company, supra, the court said:

"In Lansford v. Gloyd, 89 Okl. 232, 215 P. 198, 199, it was held: 'A contract to convey at a future time certain real estate, on the performance by the purchaser of certain acts, and the payments, etc., provided therein, does not alone create an equitable title in the purchaser, but it is only when the purchaser performs or offers to perform the acts necessary to entitle him to the conveyance that he has such an equitable interest in the property as is the subject of foreclosure.' "

■

This view was reiterated in the second opinion in Parks v. Classen Company, supra.

■ We conclude, therefore, under the established doctrine in Oklahoma, Sutton did not acquire by virtue of his original contract a vested equitable title in the mineral rights in the leased premises.

The litigation was not successfully terminated upon the entry of the judgment of February 28, 1929, because the Sinclair Company prosecuted an appeal from that judgment to the Supreme Court of Oklahoma and gave a supersedeas bond to stay the judgment pending the appeal.

By the contract of October 11, 1930, Sutton agreed to accept the sum of $150,000.00 in lieu of the provisions for compensation in the original and supplemental contracts of employment and as his share of the funds to be received in the contemplated settlement of the litigation; and by his release of October 17, 1930, he expressly released and discharged the original and supplemental contracts.

Under the terms of the compromise agreement effected while the appeal was still pending the lease was not cancelled but was ratified and confirmed in the Sinclair Company and remained in full force and effect.

Hence, the condition, namely, that the lease or some portion thereof should be cancelled through the effect of the suit, upon which the obligation of the Crews heirs to convey to Sutton an undivided 3/32nds interest in the mineral rights in the leased premises depended, never occurred. It follows that Sutton never did acquire an equitable interest in the mineral rights in the leased premises.

Sutton discharged the contracts of employment and accepted in lieu of his rights thereunder as compensation for the legal services rendered the Crews heirs the sum of $150,000.00 in cash.

We conclude that the entire $150,000.00 was compensation for services received in the year 1930 and taxable as ordinary income at the normal and surtax rates.

Affirmed.