DICKERSON et al. v. FEARS et ux.

No. 34219.   Oct. 9, 1951.

*236 P. 2d 472.*

C. H. Bowie and Wallace Hatcher, Pauls Valley, for plaintiffs in error.

David A. Kline, Oklahoma City, for defendants in error.

HALLEY, V. C. J. This is an action by J. A. Fears and wife for possession and to quiet title to three lots in the town of Maysville, Oklahoma, against T. Dickerson et ux, and others. Plaintiffs alleged that they were the owners of the legal title to the land, and plead a complete chain of title thereto. They further alleged that the land had been sold for 1939 taxes in 1940, but that the tax resale was void because the last quarter of the 1939 taxes was not delinquent when the notice of resale was published; that the tax resale deed was void; and that that tax title had been acquired by defendant Walter Caudill, who had quitclaimed to the defendants T. Dickerson and wife, who were in actual possession of the land when this action was filed in 1947.

The defendants answered and alleged that prior to the purchase by T. Dickerson et ux. from Walter Caudill, Walter Caudill had offered to convey the land to plaintiffs for what he had paid therefor, but that plaintiffs declined to purchase and assured Walter Caudill that they had no further interest in the land. T. Dickerson, his wife, and his son all testified to the same effect, and further

testified that before purchasing the land from Walter Caudill they had gone to the home of plaintiffs for the purpose of inquiring as to whether plaintiffs had or claimed any interest in the land, and were told by plaintiffs that they had no such interest. The evidence was not denied that plaintiffs knew of the improvements placed on the land by Walter Caudill and T. Dickerson and wife, and that they had given no notice or warning that they claimed or intended to claim any interest therein, until the filing of this action.

The court, at the conclusion of the evidence, announced a conditional decree and gave the parties ten days in which to meet the following conditions:

That plaintiffs be required to pay into court the following sums, to wit:

(1) $1,094.37 for the benefit of the taxes, penalties, interest, and costs due Garvin County;

(2) $9.60 to cover 1941 taxes paid by Walter Caudill;

(3) $97.97 to cover taxes and interest for the years 1942 to 1948, both inclusive, which had been paid by T. Dickerson and wife;

(4) $260 paid by T. Dickerson and wife to Walter Caudill for the three lots; $236.21 profit paid Walter Caudill by T. Dickerson and wife; and $353.79 paid by T. Dickerson and wife to Walter Caudill for improvements made by Walter Caudill, making a total of $850 to be paid T. Dickerson and wife under this item;

(5) $772.92 for improvements placed on the land by T. Dickerson and wife while in possession;

(6) $176 to cover insurance premiums paid by T. Dickerson and wife on improvements on the land;

(7) $850.54, being one-half of the enhancement in value of the land while occupied by defendants;

(8) $328.26 to cover interest at six per cent per annum on the amounts set out in numerical items 4, 5, and 6, above.

The court fixed the total amount due T. Dickerson and wife from the plaintiffs at $3,075.69, and gave plaintiffs a credit of $1,818.04 for rent, leaving a balance of $1,257.65 due defendants by plaintiffs.

Before the expiration of the ten days allowed by the court, it appears that plaintiffs paid into court the full amount adjudged to be due T. Dickerson and wife and Garvin county.

The court found that plaintiffs had paid into court all sums due, and entered final judgment for plaintiffs for possession, quieting title, and canceling all tax deeds and conveyances based thereon.

The substance of the judgment rendered by the court makes it clear that the court undertook to adjust the equities between the parties. The court must have believed that the defendants had entered on the land in good faith under color of title, and had erected valuable improvements thereon, and were entitled to the provisions of the Occupying Claimants' Act. Although defendants did not specifically plead that they were entitled to the provisions of that Act, they did plead facts applicable to the provisions of that Act, and proved that plaintiffs should be barred by estoppel and laches.

In the case of United Federal Savings & Loan Ass'n of Tulsa v. Johnson, 181 Okla. 328, 73 P. 2d 846, this court announced, in the second syllabus:

"The adjustment of rights of occupying claimants is a matter of equitable cognizance; and the courts may, in addition to the relief provided by statute and as supplementary thereto, make such orders as are equitable and just in the matters not specifically provided for by the statute. Mercer v. Justice, 63 Kan. 225, 65 P. 219; Standifer v. Morris, 25 Okla. 802, 108 P. 413."

However, in Moreland v. Shaffer, 189 Okla. 422, 117 P. 2d 118, it is said in the

body of the opinion, at page 423, Oklahoma Reports, p. 119 Pac. Reports:

"In this jurisdiction the question of the rights of an occupying claimant has no place in the trial of an action in the nature of ejectment and such rights arise only after a title better than that of defendant has been proved and after judgment has been entered against the defendant. Scott v. Potts, 60 Okla. 228, 159 P. 932; Wolcott v. Smith, 33 Okla. 249, 124 P. 970, 971; Harper v. Stumpff, 84 Okla. 187, 203 P. 194. In the instant case, however, defendants by their pleadings admitted that their title was inferior to that of plaintiffs; therefore, no question of title was involved and the court had authority and jurisdiction to proceed to determine the rights of defendants as occupying claimants."

In the case before us the question of title was involved, but the court first found that the title of the plaintiffs was superior to that of defendants and then undertook to adjust the equities of the parties and gave the plaintiffs ten days to comply with the conditional decree first rendered. After compliance therewith by the plaintiffs they were adjudged entitled to possession, their title was quieted, and all tax deeds and all conveyances based thereon were canceled.

Defendants T. Dickerson and wife have appealed and rely upon the following propositions:

"(1) Plaintiffs, by their silence and inaction, are estopped to assert their stale demand to have title quieted and for possession.

"(2) Plaintiffs, by omitting to assert their right for an unreasonable length of time, which has worked a disadvantage to these defendants, are guilty of laches and therefore barred from asserting their stale demand."

There is no question about the fact that Walter Caudill bought the land involved for $260 in the early part of 1941, and that the land had increased in value to $3,500 at the time this action was filed. The improvements placed upon the land by the defendants Walter Caudill and T. Dickerson and wife enhanced its value, as did oil and gas developments in that area.

The vital issues of fact involved have to do with the conduct and statements made by the plaintiffs from 1941 to the time when they filed this action and gave notice in 1947 to T. Dickerson and wife to surrender the premises. It is not disputed that plaintiffs learned in 1941 that the land had been sold for taxes, and had had inquiry made as to the amount necessary to redeem it. They had seen the premises being improved by the defendants, and plaintiff J. A. Fears admitted that he had been unable to redeem because of floods that destroyed his crops and expenses due to sickness in his family.

There is a sharp conflict in the testimony as to the statement made by plaintiffs to defendants under the following circumstances:

After Walter Caudill acquired the land for $260 he went to see the plaintiffs, and testified that he offered to quitclaim to plaintiffs for $260, the amount he had paid for the land, and told plaintiffs that he would wait for payment until fall, or would take their note for the consideration; that plaintiffs advised him they had no interest in the land and no intention of asserting any further interest therein, and declined his offer to convey his tax title to them. Plaintiffs denied the above and testified that they told Walter Caudill that they were unable to redeem the land on account of financial reverses; that if they were never able to redeem the land they had a daughter who would do so after plaintiffs passed on.

When Walter Caudill offered to sell to T. Dickerson, T. Dickerson and his son called on plaintiffs at their home and told them Walter Caudill was offering to sell them the land, and were told by plaintiff J. A. Fears that he had no further interest in the land and was not able to redeem it, and would as soon T. Dickerson bought it as anyone else. J. A. Fears and his wife de-

nied these statements, and Mrs. Fears testified that she told Mr. Dickerson he would get no deed from them.

Laurence Hope testified for plaintiffs that while T. Dickerson occupied the land he heard Mr. Fears tell Mr. Dickerson, at a gin in Maysville: "Now Tom, I told you when you came to see me that was my home, and some day I was going to have it back, sometime when I could." He further testified that T. Dickerson made no reply to the above remark.

Plaintiffs admitted that they had rented the land for several years and used the receipts to pay obligations against the land, and paid no taxes except for 1935 and 1936, when they completed payment on a second mortgage. They admitted that they knew the land was being improved, but made no demand and gave no notice or warning to defendants until this suit was filed.

In a case of equitable cognizance the rule is well established that this court will consider and weigh all of the evidence, but will not disturb the findings and judgment of the trial court unless found to be clearly against the weight of the evidence. After a careful consideration of all of the evidence, we conclude that the judgment of the court is not clearly against the weight of the evidence upon the question of which party held the superior title. The trial court, as the trier of the facts, had a right to disregard the testimony offered by the defendants and to believe the testimony offered by the plaintiffs.

In an effort to adjust the equities between the parties the court allowed defendants a credit of one-half the increased value of the land while T. Dickerson occupied the premises, in the sum of $850.54. This appears to have been upon the theory that if defendants had not acquired this land they would have acquired other land that would have increased in value. We think this allowance is too uncertain and speculative to justify its allowance, especially since no proof was submitted that other land would have been acquired by T. Dickerson and wife that would have increased equally in value with the premises involved. Defendants offered no authorities to sustain this proposition, and we are unable to find any.

As was said in Parks v. Classen Co., 156 Okla. 43, 9 P. 2d 432, there is no fixed or settled standard by which the doctrine of laches can be applied in all cases, but each case must be determined by the facts and circumstances of that particular case. In the case before us, Walter Caudill and T. Dickerson and wife were chargeable with constructive notice of the defects in the tax proceedings which rendered the tax title void. On the other hand, it seems probable that T. Dickerson and wife would not have bought the land had J. A. Fears made it plain that he claimed an interest and intended to undertake recovery.

We agree with the numerous authorities cited by defendants on the doctrine of estoppel and laches, but find that the case of Nohl v. Holloway, 179 Okla. 512, 66 P.2d 497, is not applicable here.

There a former owner sought to regain title to the mineral rights only against an occupying claimant who had erected valuable improvements, the value of which was being all but destroyed by oil and gas operations. This court denied the legal title holder recovery against one who held under a void tax deed. These facts did not warrant recovery by the holder of the legal title, who had never been in possession of the land or paid taxes thereon.

A supersedeas bond was executed, and it is assumed that T. Dickerson and wife are still in possession of the land. The judgment is modified as above suggested, relative to credit for one-half the enhanced value of the land, and as so modified is affirmed.

ARNOLD, C.J., and WELCH, CORN, GIBSON, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur.