## CRABB et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10632.

Circuit Court of Appeals, Fifth Circuit.

July 2, 1943.

Harry C. Weeks, of Fort Worth, Tex., and Wright Morrow, of Houston, Tex., for petitioners.

Joseph M. Jones, Sewall Key, and Helen R. Carloss, Sp.Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Claude R. Marshall, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before HUTCHESON, HOLMES, and WALLER, Circuit Judges.

HUTCHESON, Circuit Judge.

Unconvinced and undismayed by three defeats, first in the Board of Tax Appeals,[1] next in this court,[2] and again in the Tax Court[3] on remand for the taking of further evidence,[4] petitioners are here again. Arguing with the same undiminished vigor and apparent confidence that the instrument called an instrument of "agency contract and trust" entered into by them on February 15, 1932, with respect to their separately owned lands, and the transactions under it, created a partnership in their lands, they insist that this made the oil royalty and bonus income each received, on account of leases of them made by their agent and trustee, community instead of

[1] 41 B.T.A. 686.
[2] 5 Cir., 119 F.2d 772.
[3] 47 B.T.A. 916.
[4] 5 Cir., 121 F.2d 1015.

separate property. In the alternative, and only in the event that our former decision, that no partnership in the minerals was created, is adhered to, petitioners insist that at least a trust estate was created and petitioners should be properly taxed not on the $116,983.37 returned by each in 1936 as his distributive share of the income of the trust, but on $95,000.00, the amount actually distributed to each in that year.

The commissioner, insisting that the hearing on the remand developed no new facts having legal significance, urges that the order appealed from should be affirmed on the authority of our former judgment as the law of the case.

"As long", said Mr. Justice Holmes, in Guy v. Donald, 203 U.S. 399, 406, 27 S.Ct. 63, 64, 51 L.Ed. 245, where the question of partnership vel non was as furiously debated as here, "as the matter to be considered is debated in artificial terms there is danger of being led by a technical definition to apply a certain name, and then to deduce consequences which have no relation to the grounds on which the name was applied". The observation has peculiar application and force here. Petitioners, debating in artificial terms the real question to be determined here, which is not partnership vel non but, whether the bonuses and royalties received were community or separate property, have pitched their whole case on deducing consequences from denominating their land arrangement a partnership, which has no relation to the grounds on which the name is sought to be applied. In short, fallaciously assuming that if a partnership resulted from the agreements and acts in question, petitioners' separate lands lost their separate character and became community, petitioners have directed the whole force of their contentions to establishing that there was a partnership. Instead of assuming the premise that there was a partnership and denying the conclusion that this effected a change in the character of the property, the Board and this court on the former opinion have disputed and found contrary to the premise.

The Board, in its first opinion, found an entire absence on the part of the petitioners of the intention to be a partnership. It thought that the admitted facts had not created a relation contrary to their intentions, Cf. Utter v. Irvin, 5 Cir., 132 F.2d 416, Fink v. Brown, Tex.Com.App., 215 S.W. 846.

The court, on the first appeal, not questioning the conclusion that if there was a partnership the property became community, concluded that whether the result of the arrangements, written and oral, as to the ranching and farming business was a trust or a partnership, the lease and sale of mineral deposits were not included in them, and the revenues derived therefrom were individual revenues derived for them by the trustee acting as their attorney-in-fact. If we could agree with petitioners that there was a partnership, we should still conclude, that the royalty and bonus income was not community but their separate property. For it is quite clear that the consequences which petitioners seek to deduce from the application of the name partnership to their relation, that their separately owned property would cease to be separately owned, do not at all follow therefrom. The rule they invoke applies only to efforts of wives to enter mercantile business, and this because the property has become so mingled and confused that it has lost its capacity to be identified.[5] But a careful examination of the record as supplemented on the new hearing fails to bring anything to light which would warrant our departing from the law of the case as it was settled in the former opinion, that there was no partnership [6] or trust as to the lands but only an agency. The Board's judgment is Affirmed.

WALLER, Circuit Judge (concurring in part and dissenting in part).

I concur in the conclusion that the arrangement of petitioners was not a partnership, and even if the instrument denominated "agency contract and trust" had created a partnership, it did not create a mercantile partnership business and the

---

[5] Miller v. Marx & Kempner, 65 Tex. 131; Smith v. Bailey, 66 Tex. 553, 1 S. W. 627; Middlebrook Bros. v. Zapp, 73 Tex. 29, 10 S.W. 732; Mitchell v. Mitchell, 80 Tex. 101, 15 S.W. 705; Thompson v. Schmitt, 115 Tex. 53, 274 S.W. 554; Brittain v. O'Banion, Tex.Civ.App., 56 S.W.2d 249, 251, where it is said:

"It has long been settled law that the profits derived from a married woman's separate property in a mercantile business are community property, and as such are subject to the debts of her husband."

[6] Cf. Waddell v. Commissioner, 5 Cir., 102 F.2d 503.

profits were not community property. However, I think the parties created a trust in the lands and mineral rights and not an agency as held by this Court in its former opinions. 119 F.2d 772; 121 F.2d 1015.

The trust indenture (Sec. 14) provided:

"But it is further controllingly provided that the *trustees* herein named, Mrs. Kate B. Welder, and James F. Welder, Jr., or the said James F. Welder, Jr., alone *and their successor trustees* shall have and are hereby given and granted full power and authority from time to time, to lease, rent, and let the lands of this trust estate, **or** any part thereof, for oil, gas and minerals, for such prices, bonuses, rentals and royalties and on such terms, time and conditions as to them or him shall seem proper, and shall receive all such bonuses, rentals and royalties, and *any such lease or leases so executed, shall not be terminated by the expiration of the ten year term of this trust, or its earlier termination, but such lease or leases shall continue in effect, notwithstanding the termination of this trust, until terminated by the particular terms of such lease.* In case of such leases executed by the said Mrs. Kate B. Welder and James F. Welder, Jr. or by the said James F. Welder, Jr. alone, even if the said Mrs. Kate B. Welder be at that time a trustee hereunder or executed by the successor trustees it shall not be necessary for the beneficiaries hereunder or any party to this instrument to join in any such leases, but they or he as the case may be, are hereby appointed attorneys in fact or attorney in fact of each and every party hereto, to execute such lease or leases. This power to lease, without the joinder of the beneficiaries and parties hereto is not limited to the said Mrs. Kate B. Welder and James F. Welder, Jr. or to the said James F. Welder, Jr. alone, and *is fully given and granted to the other successor trustees.* In the event of the death or incapacity of the said Mrs. Kate B. Welder, and the said *James F. Welder, Jr.,* has appointed *another trustee,* he alone shall still nevertheless have the powers to lease, as above set forth." (Emphasis added.)

Under the foregoing paragraph the power to lease was definitely given to the trustees named and their successor trustees. It further provided that the power to lease (referring to oil and gas leases) was not limited to named trustees alone but was fully given and granted to other successor trustees. In the event of death or incapacity of the said Mrs. Kate B. Welder (a named trustee) the other named trustee alone should still have the power to lease the lands for mineral purposes. The statement that the trustees "are hereby appointed attorneys in fact or attorney in fact of each and every party hereto, to execute such lease or leases" is mere surplusage and added nothing to the power of the trustees not otherwise granted. The trust instrument had, by its terms, already made them attorneys in fact, and the authorization to the trustees to act as attorneys in fact was in amplification, or definition, of the powers of the trustees and not in limitation thereof. It is significant that all leases were executed by the trustees, as such, and not as attorneys in fact.

I conclude that the taxes applicable to a trust and its beneficiaries should have been applied here, and therefore dissent only to that part of the decision which rejects the trust theory of the case. So much of the former opinions of this Court in 119 F.2d 772 and 121 F.2d 1015, as held to the contrary should be expressly overruled.