THOMAS W. BLAKE, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 36059.    Promulgated June 30, 1953.

*William O. Taylor, Esq.*, *Cecil N. Cook, Esq.*, and *Frank J. Knapp, Esq.*, for the petitioner.

*F. S. Gettle, Esq.*, for the respondent.

**OPINION.**

*Issue 1.*

JOHNSON, *Judge:* The first issue is, when did petitioner receive compensation for legal services performed and to be performed? Was it in 1937 or in 1944? The compensation in question is the reasonable value of an undivided one-fourth of a one-half interest in a 76-acre tract. Petitioner contends that he received his compensation in 1937. He maintains that he received title to his interest in this property when the 1937 agreement was executed and delivered by Clara May Downey, or, in the alternative, in 1943, when the "Confirmation Deed" was executed and delivered. In opposition, respondent contends that petitioner received his compensation in 1944. Respondent argues that the 1937 agreement conveyed no present interest to the petitioner, and, further, petitioner's interest in the land came into being when Clara May Downey's title was finally cleared by the Supreme Court of Texas in 1944, and then only in consideration of petitioner's performance of his prior agreement.

Reduced to its simplest terms, the question is, when was title to a one-eighth interest in the 76-acre tract conveyed to petitioner? Because of the well established rule that all real property is exclusively subject to the laws of the country within which it is situated, Conflict of Laws, 11 Am. Jur. 328, and the many cases cited therein, we must look to the laws of Texas to resolve the question as to when title passed. The Texas statutes, Vernon's Annotated Revised Civil Statutes, provide:

Article 1288. Instrument of conveyance.

No estate of inheritance or freehold, or for a term of more than one year, in lands and tenements, shall be conveyed from one to another, unless the conveyance be declared by an instrument in writing, subscribed and delivered by the party disposing of the same, or by his agent thereunto authorized by writing. Act Feb. 5, 1840 ; P. D. 671 ; G. L. vol. 2, p. 327.

Article 1294. Must be witnessed or acknowledged.

Every deed or conveyance of real estate must be signed and acknowledged by the grantor in the presence of at least two credible subscribing witnesses thereto ; or must be duly acknowledged before some officer authorized to take acknowledgements, and properly certified to by him for registration. R. S. 1879, 554.

Article 1292 gives an example of a form which shall be sufficient as a conveyance of the fee simple of any real estate. While the form of the 1937 agreement is not in the recognized form of a deed, with the exception of witnesses' signatures and the acknowledgment the 1937 agreement complies with the Texas statutes for the conveyance of property. In the agreement there are words of immediate grant, the parties are named, there is a description of the land, in writing, subscribed and delivered by Clara May Downey to petitioner. The courts of Texas have recognized the rule that an acknowledgment and the signature of witnesses are only required for purposes of notice and registration. And further, an instrument such as we have here, without an acknowledgment or the signature of witnesses, is binding between the parties thereto when it is executed by the grantor. *Clapp* v. *Engledow*, 18 S. W. 146, 82 Tex. 290; *Mondragon* v. *Mondragon*, 257 S. W. 215, 113 Tex. 404; *Hughes* v. *Sloan*, 62 S. W. 2d 194.

Respondent cites such cases as *Browne* v. *King*, 235 S. W. 522; *Sutton* v. *Commissioner*, 95 F. 2d 845, affirming 35 B. T. A. 348; *Magee* v. *Young*, 198 S. W. 2d 883, 145 Tex. 485, in support of his contentions that an instrument such as we have here does not convey a present interest in the property. None of the cited cases control the present situation.

An examination of the 1937 agreement shows that Clara May Downey expressly conveyed an interest to petitioner. While at the time of her conveyance there was a cloud on her title, she, nevertheless, could convey any interest she had in the 76-acre tract. The removal of the cloud on her title by the Texas Supreme Court in 1944 did not then create a new interest, or did not then vest a title in her or the

petitioner. The most that could be said for the effect of the court's action was that the cloud on the titles previously acquired was removed. It is proper for us to conclude that the 1937 agreement was binding between the parties, and that by it title to the one-eighth interest in the 76-acre tract was conveyed to petitioner in 1937.

Our present decision is in conformity with a similar case, *Broadway* v. *Stone*, 15 S. W. 2d 230. There, the court was called upon to interpret the legal effect of an instrument consisting of a power of attorney and a conveyance of a portion of the clients' interest in the land to the attorney. The instrument provided that the attorney was to recover certain interests for the clients and in consideration for his work the clients "hereby granted" an interest in the property in dispute. The court held that a present interest was conveyed by the instrument.

In arriving at our conclusion we have given careful consideration to respondent's contentions. Certain of these arguments are worthy of mention, namely, it is contended that no present interest was conveyed by the 1937 agreement, the contract between petitioner and Clara May Downey was not a closed transaction inasmuch as petitioner was required to work in the future, and all transactions and litigation were carried on in Clara May Downey's name.

With regard to the first, the language in the instrument is unequivocal. It states:

I hereby bargain, sell and convey unto Mr. Blake an undivided one-fourth (¼th) part of all my right, title and interest in said tract of land, and * * * [is] the only fee to be paid for the services rendered herein. * * *

These are not words conveying a future interest. There is no condition which must be met prior to the passage of title. There is no evidence indicating an intent of the parties contrary to the express language in the agreement, nor is there an ambiguity which calls for a construction or interpretation of the agreement. The agreement must speak for itself, and it speaks as a conveyance of a present interest to petitioner.

We must agree with the respondent that the agreement requires the petitioner to perform services in the future. We do not consider this agreement to render future services a condition precedent or subsequent. However, if there were a condition then we must apply the rule established in *Manton* v. *City of San Antonio*, 207 S. W. 951. There, the court held, where consideration had already been paid, that the condition in a contract will be treated as a condition subsequent. In our case petitioner had already performed some work. This was consideration already paid, and any condition would therefore be a condition subsequent. Even with a condition subsequent, title would have passed in 1937.

Finally, respondent attaches a stigma to the fact that petitioner did not use his name in the suit filed against Grace Keller and Humble. Petitioner's answer to this was that he was fearful of being made a party to the proceeding because it might create an unfavorable impression upon a jury. We think that the petitioner adequately explained his position in this respect.

Now that we have determined when title passed to petitioner, this passage of title must be reduced to terms of compensation, section 22, Internal Revenue Code, to ascertain the year the receipt of this title is taxable income to petitioner. Respondent's contention that petitioner's 1944 gross income is to be increased by the value of his interest in the tract, determined as of December 14, 1944, cannot be sustained. This contention is bottomed on the erroneous theory that the 1937 agreement conveyed no present interest to the petitioner.

By the terms of the 1937 agreement the conveyance of a one-eighth interest to petitioner was the "only fee to be paid for the services rendered herein." Petitioner received his interest in the property in 1937. Thus, he received the compensation for his services in 1937. Section 42 provides: "The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer." This means, in general, that a cash basis taxpayer reports income in the year it is received; an accrual basis taxpayer reports income when his right to receive it arises. *Spring City Foundry Co.* v. *Commissioner*, 292 U. S. 182. Since petitioner's right to the income arose in 1937, and since he received it in that year, either on a cash basis or an accrual basis, the reasonable value of the property should not have been included in gross income in 1944.

### Issue 2.

Our conclusion in the first issue that the petitioner received his compensation from Clara May Downey in 1937 precludes any need for discussion of the second issue.

### Issues 3 and 4.

Issue 3 involves the question whether the cash payment ($85,719.38) received by petitioner in 1944 was separate income or community income to petitioner and his wife. Issue 4 requires us to determine whether this cash payment should be prorated, not only over the years but also between petitioner and his wife. Petitioner and his wife each reported half of this sum, less deductions, on their 1944 returns. Respondent contends that the cash payment received from the sale of oil and gas was entirely taxable to petitioner as his separate income.

Questions as to the interest in community income are controlled by state law. *Poe* v. *Seaborn*, 282 U. S. 101; *Hopkins* v. *Bacon*, 282

U. S. 122. Under Texas law the fact that a taxpayer's separate property produced the income, such as rents, does not make the income his separate property under Texas law. See *Commissioner* v. *Terry*, 69 F. 2d 969, affirming 26 B. T. A. 1418. However, royalties paid for the removal of oil and gas from separate land of either spouse are "increases of lands" and constitute separate income. *Commissioner* v. *Wilson*, 76 F. 2d 766, reversing a Memorandum Opinion of the Board of Tax Appeals; *Welder* v. *Commissioner*, 148 F. 2d 583, affirming a Memorandum Opinion of this Court; *Dolores Crabb*, 41 B. T. A. 686, affd. this issue 119 F. 2d 772; remanded, 47 B. T. A. 916, affd. 136 F. 2d 501. This rule arises from the Texas doctrine that oil and gas in place are a part of the realty and capable of separate ownership, and accordingly that royalties represent the proceeds of a sale of property rather than the rents and services therefrom. See Mertens Law of Federal Income Taxation, volume 3, section 19.16, page 34.

The respondent must be sustained in that the $85,719.38 was taxable as the separate income of the petitioner and is not community income of petitioner and his wife.

Since the petitioner is on a cash basis and since he received the income in 1944, the $85,719.38 is includible in his gross income in 1944. There is no reason to prorate it over the years prior to 1944.

## *Issue 5.*

Next, is petitioner entitled to a depletion deduction based on his interest in the 76-acre tract? Section 23 (m) of the Code provides that under the rules and regulations of the Commissioner a reasonable allowance for depletion of oil and gas wells may be deducted from gross income. The owner of an economic interest in mineral deposits is allowed annual depletion deductions. Regulations 111, section 29.23 (m)-1.

It is settled that the same basic issue determines both to whom income derived from the production of oil and gas is taxable and to whom a deduction for depletion is allowable. *Anderson* v. *Helvering*, 310 U. S. 404. We have already determined that petitioner is the owner of an undivided one-eighth interest in the 76-acre tract, and the proceeds from the sale of his proportionate share of the gas and oil are taxable to him as separate income. Petitioner, as the owner in fee simple of an undivided interest in oil and gas producing property, has an economic interest in such property. He is entitled to a deduction for depletion based upon his interest in the property. *Anderson* v. *Helvering, supra;* also, see *Burnet* v. *Harmel*, 287 U. S. 103; *Commis-*

*sioner* v. *Happold*, 141 F. 2d 199, affirming a Memorandum Opinion of this Court, entered December 1, 1942. The parties have stipulated that $27,427.86 is the allowable deduction for depletion; therefore, the cash payment received by petitioner from Humble in December 1944 shall be reduced by this sum when determining his taxable income.

## Issue 6.

Is petitioner entitled to a deduction for depreciation of oil well equipment for the years 1944, 1945, 1946, and 1947? Section 23 (l), Internal Revenue Code, provides that a reasonable allowance may be deducted in computing net income for the exhaustion, wear, and tear of property used in the trade or business, or property held for the production of income. Petitioner claims, under the terms of the operating agreement between Clara May Downey and Humble, that he owned a one-eighth interest in the depreciable equipment used on the 76-acre tract. Respondent contends that petitioner has failed to show that the equipment had a value separate and apart from the land, or that the equipment had a basis, or the length of the useful life.

In computing petitioner's one-eighth interest in the proceeds from the sale of oil and gas for the December 1944 cash payment, Humble charged petitioner $3,363.25 for depreciable equipment. Petitioner in 1944 reported this $3,363.25 as an addition to the $85,719.38 and then reduced the resulting aggregate income by a depreciation deduction of $960.94. Petitioner and respondent have stipulated the following:

If Petitioner is entitled to a deduction for depreciation of equipment used in connection with operation of the 76.52-acre tract for production of oil and gas, the amount of the deduction to which he is so entitled for each year involved in this proceeding will be determined by the parties under Rule 50.

The evidence on this issue is limited to the stipulations that Humble reduced petitioner's cash payment by $3,363.25 for "depreciable equipment," and that petitioner in turn reported this sum as income. Neither party has proved petitioner's ownership or the lack of ownership in the equipment. However, ownership is not a prerequisite to the right to a depreciation deduction. See *Helvering* v. *F. & R. Lazarus & Co.*, 308 U. S. 252. The test is whether petitioner would suffer an economic loss as the result of a decrease in value of the property due to depreciation. *Weiss* v. *Wiener*, 279 U. S. 333; *Atlantic Coast Line Railroad Co.*, 31 B. T. A. 730, affd. 81 F. 2d 309. Petitioner has not qualified under this test. He has not shown that he has or that he will suffer an economic loss on the equipment in question. Therefore, on this issue the respondent must be sustained.

*Decision will be entered under Rule 50.*