T.C. Memo. 2000-358

UNITED STATES TAX COURT

UMIT TARAKCI, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8641-99.                    Filed November 21, 2000.

Roger E. Lageschulte, for petitioner.

Roy Wulf, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, Judge:  Respondent determined a deficiency in

petitioner's 1993 Federal income tax of $28,928, an addition to

tax under section 6651(a)(1)[1] in the amount of $739.75, and an

_____

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year in issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.

accuracy-related penalty under section 6662(a) in the amount of $5,785.60.[2]

After concessions, the issues for decision[3] are:  (1) Whether petitioner's leasing activity was a trade or business; (2) whether petitioner's losses constitute nondeductible passive losses under section 469; (3) whether petitioner substantiated deductions claimed on his Schedule C, Profit or Loss From Business; (4) whether petitioner is liable for an addition to tax for failing to timely file his 1993 Federal income tax return; and (5) whether petitioner is liable for the accuracy-related penalty under section 6662(a).

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference.  Petitioner is a cash method taxpayer who resided in Fall City, Washington, at the time he filed his petition.

Petitioner is a scientist with an M.S. degree in solid state devices and a Ph.D. degree in ultrasonic and semiconductor device

---

[2]All subsequent references to monetary amounts are rounded to the nearest dollar.

[3]The notice of deficiency contains adjustments to petitioner's itemized deductions and statutory exemption allowance for the year in issue.  These are computational adjustments which will be resolved by the outcome of the issues to be decided, and we do not separately address them.

issues.  Petitioner has worked for various companies dealing with the applications of ultrasound, a highly specialized and technical subject matter.  In June of 1993, petitioner's employment with Acuson, an ultrasound company located in California, ended after 5-1/2 years of service.  In August of 1993, petitioner commenced employment with Siemens Ultrasound, located in Washington State.  Petitioner moved to Washington at that time but returned to California on the weekends throughout the remainder of 1993.  At the time of trial, petitioner remained employed with Siemens Ultrasound.

In 1989, petitioner formed a sole proprietorship, "Cilena Industries" (Cilena), under the laws of the State of California for the purpose of manufacturing special semiconductor devices and materials and conducting research in the semiconductor industry.  Petitioner originally intended to use Cilena as the main business entity from which to conduct research and development.  However, petitioner abandoned this intention shortly after formation and, instead, engaged Cilena in other business activities.  Cilena's activities for the period 1990 to 1993 included:  (1) Providing consulting services; (2) leasing specialized equipment for use in the semiconductor industry;[4] and

---

[4]The equipment leased by Cilena included a fixed location clean room facility, air-conditioning and exhaust and other ancillary systems, pattern generation equipment, photomask measurement and photomask defect detection systems, wet

(continued...)

(3) the construction and operation of a portable "clean room"[5] facility. Cilena maintained a business checking account, and petitioner consistently disclosed the existence of Cilena on his Schedule C. Petitioner never reported any income attributable to the equipment leasing activity.

In October of 1990, petitioner and Raymond Cotter (Mr. Cotter) entered into an oral agreement to commence business as equal partners in "Aeternum", a general partnership formed under the laws of the State of California. On May 22, 1992, petitioner and Mr. Cotter reduced the partnership agreement to writing and specified that Aeternum had been in existence since October 3, 1990. The purpose of Aeternum was to "engage in the general business of electronic device research and development, computerized design, applied research, manufacturing and consulting, and any other business agreed on by the majority of Partners in writing." Petitioner and Mr. Cotter were required to contribute services to Aeternum but were not required to contribute any initial capital. The partnership agreement

---

[4](...continued)
processing equipment, microscopes and measurement systems, a sputter deposition system, photolithography equipment, and miscellaneous items.

[5]The portable clean room was a relatively small, mobile structure containing equipment designed to conduct research in the semiconductor field. The temperature inside the structure was precisely controlled and clean-room filtered air was circulated.

provided that all equipment was leased from Cilena, except for four items which were owned by petitioner and Mr. Cotter in proportion to their shares in the partnership. Aeternum originally operated out of the facilities petitioner had leased for Cilena. However, Aeternum's operations soon required a larger facility, and a separate facilities lease was entered into with a third party in May of 1991. Petitioner and Mr. Cotter shared in the maintenance of Aeternum's financial books, but no partnership returns were filed while Aeternum was in existence.[6]

On January 16, 1992, Cilena and Aeternum signed an equipment leasing agreement. The agreement was applicable to "all rental transactions between * * * [Cilena] and * * * [Aeternum] during the period commencing on August 1, 1990 and concluding on December 31, 1996." Petitioner, petitioner's brother Andrew West (Dr. West), and petitioner's cousin Bahadir Icel (Mr. Icel) signed the lease on behalf of Cilena. Petitioner and Mr. Cotter signed the lease agreement on behalf of Aeternum. The monthly amount charged under the equipment lease was to be computed by multiplying the rental value of the equipment by a percentage which was equal to one-twelfth of the highest prevailing U.S. annual prime interest rate plus one-twelfth percent. The lease

---

[6]A bankruptcy settlement agreement designated Mr. Cotter as the "Tax Matters Partner" and required him to file Federal and State income tax returns for Aeternum, but it was unclear at the time of trial whether Mr. Cotter had actually filed the returns.

agreement acknowledged that the rental price was less than prevailing market rentals for the same or similar equipment. In consideration of this factor, Aeternum was required, at its sole expense, to store any nonrental equipment owned by Cilena in a safe and suitable manner for the remainder of the equipment lease. The lease agreement did not require Cilena to operate, maintain, or render any services with respect to the rental equipment. The lease agreement provided that Aeternum owed Cilena for past due expenses in the amount of $5,189 for rent and $9,818 for other expenses and that such debts had to be repaid before petitioner and Mr. Cotter could withdraw any profits from Aeternum. Aeternum was the sole lessee of the equipment and never paid any of the rent due to Cilena under the equipment leasing agreement.

For the period 1990 through April of 1993, Aeternum served between 20 and 30 customers and incurred losses of approximately $10,000. Neither petitioner nor Mr. Cotter reported his share of this loss. By early 1993, Aeternum was approximately $21,000 delinquent on the rental payments due under the facilities lease with the third party. No business was conducted by Aeternum after April of 1993, and at that time the facilities lease still had 3 years remaining and approximately $150,000 in future rental payments.

On April 21, 1993, petitioner filed for bankruptcy in order to avoid paying the rent due under the facilities lease. A bankruptcy trustee was appointed for petitioner. On April 23, 1993, Mr. Cotter filed a lawsuit against petitioner, Dr. West, and Mr. Icel in the United States Bankruptcy Court for the Northern District of California seeking the dissolution of Aeternum, an accounting, and damages in excess of $1 million. Petitioner employed various attorneys in connection with his bankruptcy and the defense of Mr. Cotter's lawsuit. Contemporaneous with the lawsuit being filed, petitioner removed the rental equipment from the facilities leased by Aeternum and stored some of the equipment in a storage space rented in Dr. West's name.

An attorney representing petitioner in Aeternum's affairs made the following reference for May 1, 1993, in an invoice to petitioner: "telephone conf. with * * * [petitioner] re representing * * * [Dr. West] in action against landlord re equipment sold to * * * [Dr. West] by * * * [petitioner]". A different attorney representing petitioner in his bankruptcy and Aeternum affairs made the following reference for July 23, 1993, in an invoice to petitioner: "conference with * * * [Dr. West's attorney] re: his comments and changes pursuant to list of equipment for items sold".

On August 30, 1993, petitioner and Mr. Cotter entered into a Mutual Settlement and Release Agreement (Settlement Agreement) under applicable laws of the State of California. In the Settlement Agreement, petitioner made the following representation with respect to the equipment that was leased under the contract between Cilena and Aeternum:

> [Petitioner] represents and warrants that he does not own the Leased Equipment and that he assigned such Leased Equipment to * * * [Dr. West]; as such, to the best of * * * [petitioner's] knowledge, * * * [Dr. West] is the true owner of the Leased Equipment.

The "leased equipment" was defined under the Settlement Agreement to be "the equipment used by * * * [Aeternum] subject to the lease by and between * * * [Aeternum] and * * * [Dr. West], as assignee of Cilena Industries."

The Settlement Agreement resolved the litigation that Mr. Cotter had commenced, resulted in the dismissal of petitioner's bankruptcy proceedings, and dissolved Aeternum. Numerous assets, to the extent they were owned by the partnership, were ordered to be transferred to Mr. Cotter. Additionally, other equipment which was originally leased to Aeternum by Cilena was ordered transferred to Mr. Cotter. Mr. Cotter was required to execute and deliver to petitioner a Form UCC-1 Financing Statement,[7] pursuant to California law, securing the rental equipment for an

_____

[7]The Form UCC-1 Financing Statement is used to provide public notice of a security agreement. See Cal. Com. Code secs. 9302, 9401-9403 (West 1990).

indemnity obligation that Mr. Cotter owed petitioner under the Settlement Agreement. The rent owed to Cilena under the equipment lease was not mentioned in the Settlement Agreement.

On June 30, 1995, petitioner filed his 1993 Form 1040, U.S. Individual Income Tax Return. Petitioner reported adjusted gross income of $47,535 ($143,054 wage income, $116 dividend income, $92,635 business loss, $3,000 capital loss).

On his Schedule C, petitioner reported $2,850 in gross receipts for consulting services rendered by Cilena. The amount earned for the consulting services was unrelated to Cilena's equipment leasing activity. The following business expenses were reported on petitioner's Schedule C:

| Item | Amount |
|------|--------|
| Legal and professional | [1]$57,924 |
| Depreciation | 20,815 |
| Equipment storage | 5,326 |
| Equipment transportation | [2]3,669 |
| Travel | 3,104 |
| Security antitheft | 2,394 |
| Car and truck | 820 |
| Business telephone | 733 |
| Office | 241 |
| Meals | [3]160 |
| Advertising | 126 |
| Professional publications | 108 |
| Repairs and maintenance | 65 |
| Total | $95,485 |

[1]Petitioner concedes that $1,635 of the legal and professional fees concerned litigation with his former employer, Acuson, and argues that it should have been reported on his Schedule A, Itemized Deductions, rather than Schedule C.

[2]Petitioner concedes that $1,800 in equipment transportation expenses was not paid until a subsequent year. Accordingly, the equipment transportation expense at issue is $1,869.

[3]Petitioner concedes that some of the meal expenses were not related to Cilena and further that the meal expenses attributable to Cilena must be reduced. Accordingly, the meal expenses at issue are $36.

On February 3, 1999, respondent issued a notice of deficiency for the year 1993 disallowing petitioner's entire business loss. Petitioner timely filed a petition to this Court seeking a redetermination. In his amended answer to the petition, respondent asserted that petitioner's 1993 business loss was subject to the passive activity loss limitations of section 469.

OPINION

I. Trade or Business of Leasing Equipment

The notice of deficiency disallowed petitioner's deductions for a variety of reasons, one of which was that petitioner did not establish that he was in the trade or business of leasing equipment. Respondent did not make this argument in his original brief and only alluded to it in his reply brief.[8]

Based on the evidence in the record, we hold that petitioner engaged in the trade or business of leasing equipment with the primary purpose of making a profit. See Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987); Wolf v. Commissioner, 4 F.3d 709, 713 (9th Cir. 1993), affg. T.C. Memo. 1991-212; Warden v. Commissioner, T.C. Memo. 1995-176, affd. without published

[8]Respondent has not challenged whether the provision of consulting services and operation of a portable clean room were trade or business activities of petitioner.

opinion 111 F.3d 139 (9th Cir. 1997). While the activity was ultimately not profitable, petitioner's original intention of using the equipment for his own business, his noncollection of rent to promote his interest in Aeternum, his intelligence with respect to the semiconductor industry and the equipment being leased, and the absence of elements of personal pleasure or recreation all indicate that petitioner's primary purpose was generating a profit.

## II. Section 469

Respondent's primary argument is that any loss incurred by petitioner was incurred in a leasing activity and therefore should be disallowed pursuant to the passive activity loss limitations of section 469. Because respondent first asserted the passive loss argument in his amended answer, respondent bears the burden of proof on this issue. See Rule 142(a); Shea v. Commissioner, 112 T.C. 183, 191 (1999).

### A. Active or Passive Loss

Pursuant to section 469(a), a passive activity loss is generally not allowed as a deduction for the year in which it is sustained. A passive activity loss is defined as the excess of the aggregate losses from all passive activities for the taxable year over the aggregate income from all passive activities for that year. See sec. 469(d)(1). Passive activities are those activities which involve the conduct of a trade or business in

which the taxpayer does not materially participate. See sec.
469(c)(1). Rental activities are presumptively passive, without
regard to whether the taxpayer materially participates in the
activity. See sec. 469(c)(2), (4). Both parties agree that
petitioner's equipment leasing activity is a rental activity and
that the income therefrom is passive in nature, unless petitioner
qualifies under one of the six exceptions listed in the
regulations. See Welch v. Commissioner, T.C. Memo. 1998-310;
sec. 1.469-1T(e)(3)(ii)(A) through (F), Temporary Income Tax
Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988).

B. Incidental Exception

An activity involving the use of tangible property is not
considered a rental activity if "The rental of such property is
treated as incidental to a nonrental activity of the taxpayer"
for the taxable year. Sec. 1.469-1T(e)(3)(ii)(D), Temporary
Income Tax Regs., supra at 5702. Section 1.469-1T(e)(3)(vi)(C),
Temporary Income Tax Regs., 53 Fed. Reg. 5703 (Feb. 25, 1988),
provides, in pertinent part:

> (C) Property used in a trade or business. The
> rental of property during a taxable year shall be
> treated as incidental to a trade or business activity
> (within the meaning of paragraph (e)(2) of this
> section) if and only if--
>
> (1) The taxpayer owns an interest in such
> trade or business activity during the taxable
> year;
>
> (2) The property was predominantly used in
> such trade or business activity during the taxable

year or during at least two of the five taxable
years that immediately precede the taxable year;
and

(3) The gross rental income from such
property for the taxable year is less than two
percent of the lesser of--

(i) The unadjusted basis of such
property; and

(ii) The fair market value of such
property.

Respondent's sole argument is that the "incidental"

exception does not apply because the equipment leasing activity

was not incidental to any other activity of Cilena. Petitioner

contends that the trade or business activities of Aeternum are

trade or business activities of petitioner for purposes of this

exception.

A "trade or business activity", for purposes of the

"incidental" exception, is defined as an activity (other than a

rental activity or an activity incidental to the activity of

holding property for investment) that: (1) Involves the conduct

of a trade or business (within the meaning of section 162); (2)

is conducted in anticipation of the commencement of a trade or

business; or (3) involves research or experimental expenditures

that are deductible under section 174.[9] Sec. 1.469-4(b)(1),

---

[9]Sec. 1.469-1T(e)(3)(vi)(C), Temporary Income Tax Regs., 53
Fed. Reg. 5703 (Feb. 25, 1988), references paragraph (e)(2) for
the definition of "trade or business activity." Paragraph (e)(2)
references sec. 1.469-1(e)(2), Income Tax Regs., which further
(continued...)

Income Tax Regs. The evidence in the record establishes that Aeternum, a general partnership engaged in the manufacturing of semi-conductor devices, was a trade or business.

The first issue is whether the trade or business activities of Aeternum, a general partnership, can be classified as the trade or business activities of petitioner for purposes of the "incidental" exception. The regulations require that the taxpayer own "an interest in such trade or business activity", not that the taxpayer be the sole owner of the trade or business. Sec. 1.469-1T(e)(3)(vi)(C)(1), Temporary Income Tax Regs., 53 Fed. Reg. 5703 (Feb. 25, 1988). Section 1.469-4(a), Income Tax Regs., provides that a taxpayer's activities include those conducted through a partnership for purposes of grouping a taxpayer's trade or business activities with rental activities. Additionally, petitioner was actively involved in affairs of the general partnership and substantially contributed both time and effort to the success of Aeternum. Based on the regulations and the facts before us, we hold that the trade or business activities of petitioner for 1993 include the trade or business activities of Aeternum for purposes of the "incidental" exception. Cf. Podell v. Commissioner, 55 T.C. 429, 433 (1970) (interpreting "his trade or business" under section 1221(1) to

---

[9](...continued)
references sec. 1.469-4(b)(1), Income Tax Regs.

mean the trade or business of the partnership).

To gain entitlement to the "incidental" exception, petitioner must pass a three-part test. The first part requires petitioner to own an interest in Aeternum during 1993. Petitioner was a 50-percent owner of Aeternum from October of 1990 until the partnership was effectively dissolved in August of 1993. The second part requires a finding that the equipment was predominantly used by Aeternum during 1993 or during at least two of the previous 5 taxable years. The evidence shows that Aeternum relied on Cilena's equipment to manufacture products for the period 1990 through April of 1993 and that the equipment was an integral part of the partnership business. The final part requires that petitioner's gross rental income from the equipment leasing activity be less than 2 percent of the lesser of the unadjusted basis of the equipment and the fair market value of the equipment. Petitioner reported zero gross rental income from the equipment for 1993, as well as for the previous taxable years during which the equipment lease was in effect. The evidence in the record reflects that the equipment had an unadjusted basis and fair market value above zero. Respondent, who carries the burden of proof as to this issue, has failed to present evidence that petitioner received gross rental income and has also failed to establish the unadjusted basis or fair market value of the equipment. We hold that the "incidental" exception set forth in

the regulations under section 469 applies to petitioner.

The passive loss limitations of section 469 still apply to petitioner unless the material participation standard is met. See sec. 469(c)(1); Welch v. Commissioner, supra. A taxpayer is treated as materially participating in an activity only if the taxpayer is involved in the activity on a basis which is regular, continuous, and substantial. See sec. 469(h)(1). Petitioner conducted the equipment leasing activity through his sole proprietorship and personally purchased equipment, used materials to construct equipment for use in the operations of the partnership, maintained business expense records, and conducted transactions relating to the leasing activity. Based on all the facts and circumstances, we hold that petitioner was involved in the leasing activity on a basis that was regular, continuous, and substantial. See sec. 1.469-5T(a)(7), Temporary Income Tax Regs., 53 Fed. Reg. 5726 (Feb. 25, 1988).

III. Entitlement and Substantiation of Claimed Deductions

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving the entitlement to any deduction claimed. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).[10] Taxpayers must substantiate any deductions

---

[10]Sec. 7491, as effective for court proceedings arising in connection with examinations after July 22, 1998, shifts the
(continued...)

claimed.  See <u>Hradesky v. Commissioner</u>, 65 T.C. 87, 89-90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).  Taxpayers are required to maintain records sufficient to enable the Commissioner to determine the taxpayer's correct tax liability. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

Section 162(a) allows a deduction for all ordinary and necessary expenses incurred during the taxable year in carrying on a trade or business.  To be "necessary" an expense must be "appropriate and helpful" to the taxpayer's business.  <u>Welch v. Helvering</u>, 290 U.S. 111, 113 (1933).  To be "ordinary" the transaction which gives rise to the expense must be of common or frequent occurrence in the type of business involved.  <u>Deputy v. du Pont</u>, 308 U.S. 488, 495 (1940).

The Schedule C deductions in issue fall into eight categories:  (1) Legal and professional fees; (2) depreciation; (3) travel and meals; (4) equipment transportation and storage; (5) office; (6) telephone; (7) security; and (8) advertising.

---

[10](...continued)
burden of proof to the Commissioner, subject to certain limitations, where a taxpayer introduces credible evidence with respect to factual issues relevant to ascertaining the taxpayer's liability for tax.  See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001, 112 Stat. 726-727.  Respondent contends that the examination commenced before July 22, 1998, and petitioner has not argued that sec. 7491 is applicable to him.

A.    Legal and Professional Fees

Petitioner claimed a deduction of $57,924[11] for legal and professional expenses.  The amounts in issue relate to expenses associated with petitioner's personal bankruptcy proceeding and with defending against the lawsuit filed by Mr. Cotter.  Petitioner argues that such expenses are deductible because they are related to his trade or business interests.  Respondent argues that such expenses are not ordinary and necessary and that petitioner has failed to provide a basis for allocating the costs between business and personal expenses.

Section 162(a) allows a deduction for all ordinary and necessary expenses paid or incurred during the year in carrying on a trade or business.  Section 262(a) disallows a deduction for personal expenses.  To decide whether an expense is deductible as a trade or business expense as opposed to a nondeductible personal expense, we look to the origin and character of the expense.  See Woodward v. Commissioner, 397 U.S. 572, 577 (1970); United States v. Gilmore, 372 U.S. 39, 48 (1963);[12] American

---

[11]Petitioner concedes that $1,635 of this amount was incorrectly reported on his Schedule C but contends that it may be deductible on Schedule A as a miscellaneous itemized deduction.  Petitioner failed to provide computations or other evidence to support this contention.

[12]"[T]he origin and character of the claim with respect to which an expense was incurred, rather than its potential consequences upon the fortunes of the taxpayer, is the controlling basic test of whether the expense was 'business' or
                                                    (continued...)

Stores Co. & Subs. v. Commissioner, 114 T.C. 458, 470 (2000). Legal expenses are deductible if the claim arises in connection with the taxpayer's profit-seeking activities. See United States v. Gilmore, supra at 48. In the present case, if petitioner's personal bankruptcy is proximately related to his trade or business, then the legal expenses associated with the bankruptcy are deductible. See Kornhauser v. United States, 276 U.S. 145, 153 (1928); Dowd v. Commissioner, 68 T.C. 294, 303-304 (1977); Ainsworth v. Commissioner, T.C. Memo. 1987-398; Cox v. Commissioner, T.C. Memo. 1981-552.

In April of 1993, petitioner filed for bankruptcy in order to avoid paying the rent Aeternum owed under the facilities lease. Petitioner argues that his bankruptcy resulted from the liabilities of Aeternum, and, thus, the expenses originated from the business affairs of Aeternum and are deductible under section 162. The origin of the claim in this case was petitioner's share of the liability for the debt owed by Aeternum, a business in which petitioner had a 50-percent interest. Aeternum's failure to pay rent forced petitioner into seeking bankruptcy protection. The legal expenses incurred by petitioner were related to the business activities of Aeternum and are deductible. See sec. 162(a); see also Scofield v. Commissioner, T.C. Memo. 1997-547.

---

[12](...continued)
'personal'". United States v. Gilmore, 372 U.S. 39, 49 (1963).

Two days after petitioner filed for bankruptcy, Mr. Cotter filed a lawsuit in the United States Bankruptcy Court against petitioner based on multiple causes of action relating to the equipment leasing activity of Cilena and the partnership affairs of Aeternum. As a result, petitioner was forced to defend against such causes of action in order to protect his interests in Aeternum and Cilena. A lawsuit "ordinarily and, as a general thing at least, necessarily requires the employment of counsel and payment of his charges." Kornhauser v. United States, supra at 152. Petitioner incurred legal expenses as a result of Mr. Cotter's lawsuit, which arose directly out of the business affairs of Cilena and Aeternum. These expenses are deductible under section 162.

Having established that petitioner is entitled to the legal expenses incurred in his bankruptcy and the defense of Mr. Cotter's lawsuit, we must decide whether petitioner has sufficiently substantiated the claimed deduction.

The legal expenses in issue consist of: (1) Payment to Dr. West in the amount of $13,749 for anticipated legal and travel expenses; (2) payment to George Bozzo in the amount of $500 relating to the business affairs of Cilena and Aeternum; (3) payment to Sunnyvale Bar Association in the amount of $30 for referral to a bankruptcy attorney; (4) payment to Larry Hughes in the amount of $4,350 for legal work relating to petitioner's

bankruptcy; (5) payment to Berliner Cohen in the amount of $22,000 for legal work relating to petitioner's bankruptcy and partnership dispute; and (6) payment to Murray & Murray in the amount of $15,660 for bankruptcy trustee services.

Petitioner presented copies of checks, invoices, and his own testimony as support for the claimed deductions. However, petitioner failed to establish that the payment to Dr. West was for actual legal expenses that petitioner incurred. Accordingly, we hold that petitioner is entitled to a deduction of $42,540 ($57,924 claimed deduction minus $1,635 concession minus $13,749 payment to Dr. West).

B.   Depreciation

Petitioner claimed a deduction of $20,815 for depreciation. Section 167(a) allows as a depreciation deduction a reasonable allowance for the exhaustion, and wear and tear, of property used in a taxpayer's trade or business.

Respondent argues that Dr. West owned the rental equipment that depreciation is being claimed on and that petitioner's depreciation schedule is unreliable because petitioner failed to link the expenditures for the equipment with the depreciation schedule and equipment identified in the equipment lease. Petitioner argues that he owned the equipment for the entire taxable year 1993 and that he has depreciated such equipment in a consistent and accurate manner.

Legal ownership is not a prerequisite to the right to a depreciation deduction, but rather depreciation is predicated on an investment in the property.  See Helvering v. F. & R. Lazarus & Co., 308 U.S. 252, 254 (1939); Blake v. Commissioner, 20 T.C. 721, 732 (1953).  The evidence in the record reflects that petitioner divested himself of ownership and an investment in the rental equipment during the year in issue.

Respondent's contention that Dr. West was the legal owner of the rental equipment during 1993 is supported by the evidence. An attorney representing petitioner in Aeternum's affairs made the following reference for May 1, 1993, in an invoice sent to petitioner: "telephone conf. with * * * [petitioner] re representing * * * [Dr. West] in action against landlord re equipment sold to * * * [Dr. West] by * * * [petitioner]".  In an separate invoice, a different attorney representing petitioner in his bankruptcy and Aeternum affairs made the following reference for the date of July 23, 1993: "conference with * * * [Dr. West's attorney] re: his comments and changes pursuant to list of equipment for items sold".  Petitioner also made the following representation in the Settlement Agreement with respect to the equipment that Cilena rented to Aeternum under the equipment lease:

> [Petitioner] represents and warrants that he does not own the Leased Equipment and that he assigned such Leased Equipment to * * * [Dr. West]; as such, to the best of * * * [petitioner's] knowledge, * * * [Dr.

West] is the true owner of the Leased Equipment.

Petitioner testified that he delivered his business records, checkbooks, and all his assets to the bankruptcy trustee after he filed for bankruptcy. If petitioner transferred all his assets to the bankruptcy trustee, then petitioner could not have been able to sell or transfer the equipment to Dr. West after the filing of bankruptcy. Petitioner's own testimony and the documentary representations concerning ownership of the rental equipment all point to Dr. West being the owner of the property prior to petitioner's filing for bankruptcy.

Additional facts, such as the Settlement Agreement identifying Dr. West as the lessor of the rental equipment (as an assignee of Cilena), petitioner testifying that he "assigned" the rental equipment to Dr. West, a storage space facility being rented in Dr. West's name, and Mr. Cotter's testimony that he thought Dr. West owned the property further support respondent's position. Petitioner testified that his representation in the Settlement Agreement that Dr. West was the true owner of the rental equipment was the culmination of a plan on the part of petitioner, Dr. West, and Mr. Cotter to avoid the sale of the rental equipment by petitioner's bankruptcy trustee and that petitioner is still the true owner of the equipment. We do not accept petitioner's self-serving, uncorroborated testimony on this issue. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

Petitioner testified that he borrowed money from Dr. West to support the formation and business affairs of Cilena. Petitioner also presented documentary evidence and credible testimony with respect to his purchases of the rental equipment. However, petitioner's continuous insistence that he still owns the rental equipment is inconsistent with the evidence in the record.[13] Petitioner has failed to present sufficient evidence to prove the period of time he owned the rental equipment in 1993. Petitioner presented a depreciation schedule, a schedule of expenditures related to the equipment, the equipment lease, and his 1993 tax return as support for his depreciation deduction, but he did not adequately link the documents to provide a coherent basis upon which to determine an appropriate deductible amount. Petitioner did not provide evidence establishing that any of the depreciation claimed was related to the portable clean room. Accordingly, we hold that petitioner has not provided sufficient evidence for us to estimate the amount of depreciation; as a

---

[13]Petitioner contends that he is still the legal owner because Mr. Cotter never fulfilled the conditions prescribed by the Form UCC-1 Financing Statement. Petitioner represented in the Settlement Agreement that he was no longer the owner of the rental equipment. The Form UCC-1 Financing Statement was required as security for Mr. Cotter's indemnity obligation to petitioner for Aeternum liabilities assumed by Mr. Cotter. The Form UCC-1 Financing Statement evidences only a security interest, not an ownership interest, and petitioner has not established that Mr. Cotter failed to fulfill his obligations under the Settlement Agreement. See Cal. Com. Code sec. 9302 (West 1990); see also Waddell v. Commissioner, 86 T.C. 848, 858 (1986), affd. 841 F.2d 264 (9th Cir. 1988).

result, petitioner has failed to establish entitlement to a depreciation deduction. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

C.    Travel and Meals

Petitioner claimed deductions for business-related travel, business meals, and automobile expenses. Section 274(d) allows a deduction for travel expenses if the taxpayer satisfies strict substantiation requirements through either adequate records or the taxpayer's own detailed statement that is corroborated by sufficient evidence. The substantiation requirements of section 274(d) also apply to "listed property", which includes any passenger automobile. Secs. 274(d)(4), 280F(d)(4)(A)(i).[14] At a minimum, the taxpayer must establish: (1) The amount of the expense; (2) the time and place the expense was incurred; (3) the business purpose of the expense; and (4) the business relationship to the taxpayer of any persons entertained or using the property. See sec. 274(d).

Petitioner claimed a deduction of $820 for car and truck expenses. Petitioner points to his 1993 Schedule C and 1993 Form

---

[14]The rule under Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), is not applicable to deductions subject to the substantiation requirements of sec. 274(d). See Sanford v. Commissioner, 50 T.C. 823, 828 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a)(4), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

4562, Depreciation and Amortization, as documentary evidence to substantiate the claimed deduction. Section 1.274-5T(c)(2)(ii)(C), Temporary Income Tax Regs., 50 Fed. Reg. 46018-46019 (Nov. 6, 1985), requires that the date of each business use of an automobile must be stated in order to gain entitlement to a deduction. While petitioner has identified the business use mileage, he has failed to describe the automobile used, provide the dates of use, and identify the business purpose involved. Petitioner has failed to establish entitlement to this deduction.

Petitioner claimed a deduction of $3,104 for travel expenses related to flying between Seattle and San Francisco from August of 1993 throughout the end of that year. As support for these expenses, petitioner presented copies of travel tickets, various receipts, and Cilena's expense account records. In arguing that the costs were personal in nature, respondent points to the facts that petitioner stayed with his mother, lived in San Francisco his whole life prior to moving to Washington, and implied he visited friends on these trips.

Petitioner argues that the trips were necessary in order to attend bankruptcy meetings, meet with attorneys, arrange for the moving and storage of equipment, and recover business records. No evidence was presented establishing the extent and specific nature of the business conducted on each trip. The evidence in the record reflects that petitioner was no longer the owner of

the rental equipment at the time the trips occurred. Additionally, petitioner has not argued that the trips were related to the consulting services or portable clean room. Accordingly, we hold that petitioner has failed to prove entitlement to this deduction.

Petitioner claimed a deduction of $160 for business meals. However, petitioner concedes that he is entitled only to a deduction of $36, relating to one business lunch.[15] The only evidence presented by petitioner is a reference in the expense account records of Cilena to a "technician lunch". Petitioner's failure to present more evidence as to the business aspect of this lunch precludes entitlement to the deduction.

D.  Equipment Transportation and Storage

Petitioner claimed deductions of $5,326 in equipment storage expenses and $3,669[16] in equipment transportation costs. The storage and equipment transportation expenses are deductible if they are ordinary and necessary in carrying on petitioner's trade or business activities. See sec. 162(a). Petitioner has failed

---

[15]Petitioner testified that other deducted meals were not related to his business activities and contended that such meals would properly be deductible on Schedule A, Itemized Deductions, as job search expenses. Petitioner failed to provide any computations or other evidence to support this contention.

[16]Petitioner concedes that $1,799.50 in equipment transportation expenses was not paid until a subsequent year. Accordingly, the equipment transportation expense at issue is $1,869.20.

to establish the periods of ownership with respect to the rental equipment. Petitioner does not argue that the transportation and storage expenses were related to the consulting services or portable clean room. Accordingly, petitioner is not entitled to deduct the equipment transportation and storage expenses.

E. Office

Petitioner claimed deductions of $108 for professional publications and $241 for copying, printing, and postage expenses. As support for the professional publications deduction, petitioner submitted the business expense account records of Cilena for 1993, showing the $108 in publication expenses, and testified as to the nature of the publications. We hold that these expenses are properly deductible as ordinary and necessary expenses.

Petitioner testified that the other office expenses related to the general activities of Cilena and the dissolution of Aeternum. Petitioner presented the expense account records of Cilena to support the amounts claimed. Based on the evidence in the record, petitioner has established entitlement to the deduction of $241 for the other office expenses.

F. Telephone

Petitioner claimed a deduction of $733 for business telephone expenses, including the use of a cellular phone. Respondent does not challenge the amount or that petitioner made

the payments.  Respondent does challenge the nature of the telephone calls.  Petitioner presented regular telephone records from April, May, and June of 1993, bearing notations of the calls which were business in nature.  Petitioner presented cellular phone records from July to December of 1993 indicating the time, amount, and place of the calls.  Cellular phones are classified as "listed property" under section 280F(d)(4)(A)(v), and such expenses must be substantiated by adequate records or sufficient evidence which corroborate the taxpayer's own testimony, including:  (1) The amount of the expenditure or use based on the appropriate measure; (2) the time and place of the expenditure or use; and (3) the business purpose of the expenditure or use.  See sec. 274(d).  Petitioner testified that the business purpose of the calls related to legal matters and the affairs of Cilena, as well as the dissolution of Aeternum.  We hold that petitioner has established entitlement to a deduction for the regular telephone and cellular phone expenses incurred.

G.  Security

Petitioner claimed a deduction of $2,394 for security antitheft services related to the protection of the rental equipment.  Private security payments to protect property which is subject to potential loss or destruction arising from the operation of a business are deductible expenses under section 162(a).  See Munson v. Commissioner, 18 B.T.A. 232, 236-237

(1929). Petitioner's failure to prove the period of ownership with respect to the equipment precludes entitlement to any deduction for the security antitheft costs.

Petitioner also claimed a repair and maintenance deduction of $65 for lock services incurred in early April of 1993. Petitioner testified that a lock at the Aeternum facilities was damaged and that he replaced the lock to protect his own investment, not to protect an Aeternum investment. Petitioner's claimed deduction is for an expense related solely to property which he has not established ownership of. Accordingly, petitioner is not entitled to this deduction.

H.  Advertising

Petitioner claimed a deduction of $126 for advertising expenses related to the sale of equipment owned by Cilena. Advertising expenses are allowed as a deduction under section 162 if the taxpayer can show a sufficient connection between the expenditure and the taxpayer's business. See RJR Nabisco Inc. v. Commissioner, T.C. Memo. 1998-252; sec. 1.162-1(a), Income Tax Regs.

To substantiate the advertising deduction, petitioner testified that the expense was related to the selling of equipment and provided respondent with a copy of a Cilena check for $126, payable to "San Jose Mercury News", dated June 14, 1993. Petitioner also referenced the payment in his itemized

expense account report for Cilena.  Petitioner has not established that he was the owner of the rental equipment on this date.  Further, petitioner has not argued that the advertising expense was related to the consulting services or portable clean room.  Therefore, petitioner has not proven entitlement to the claimed deduction.

## IV.  Addition to Tax

Section 6651(a)(1) imposes an addition to tax for failure to file a required return on or before the specified filing date. The addition to tax is 5 percent of the amount required to be shown as tax on the return and an additional 5 percent is imposed for each additional month or fraction thereof during which the failure continues, but not to exceed 25 percent in the aggregate. See sec. 6651(a)(1).  This addition to tax may be avoided only if petitioner can show that his failure to file was due to reasonable cause and not willful neglect.  See Rule 142(a); United States v. Boyle, 469 U.S. 241, 245-246 (1985).[17]

Petitioner filed his 1993 tax return on June 30, 1995. Petitioner argues that the bankruptcy proceedings required him to provide documents to the bankruptcy trustee which were necessary for him to effectively file his tax return, and the trustee did not return the documents to petitioner until the spring of 1995. As a general matter, the unavailability of information or records

---

[17]See supra note 10.

is not reasonable cause for failure to timely file a tax return. See Crocker v. Commissioner, 92 T.C. 899, 913 (1989); Electric & Neon, Inc. v. Commissioner, 56 T.C. 1324, 1342-1343 (1971), affd. without published opinion 496 F.2d 876 (5th Cir. 1974). A taxpayer is required to timely file a tax return based on the best information available and thereafter to file an amended return if necessary. See Estate of Vriniotis v. Commissioner, 79 T.C. 298, 311 (1982). Nothing in the record suggests that petitioner applied for an extension of time to file his 1993 return. Petitioner did not establish that he made adequate efforts to gain access to necessary tax documents held by the bankruptcy trustee. The evidence shows that the bankruptcy proceeding was dismissed in August of 1993, long before petitioner's 1993 tax return was due. Additionally, petitioner maintained his business expense records on computer files which were not under the control of the bankruptcy trustee, indicating that he could have prepared a timely 1993 return with a reasonable degree of accuracy. Petitioner has presented no evidence showing that either Acuson or Siemens Ultrasound submitted their Form W-2, Wage and Tax Statement, in an untimely manner which would prejudice petitioner's ability to file his 1993 tax return. In light of the evidence before us, we find that petitioner has not demonstrated that his failure to timely file his 1993 return was due to reasonable cause or a lack of

negligence.  Accordingly, we hold that petitioner is liable for the addition to tax under section 6651(a)(1).

## V.   Accuracy-Related Penalty

Section 6662(a) imposes a penalty equal to 20 percent of the portion of an underpayment of tax attributable to a taxpayer's negligence, disregard of rules or regulations, or substantial understatement of income tax.  See sec. 6662(a), (b)(1) and (2). "Negligence" has been defined as the failure to do what a reasonable and ordinarily prudent person would do under the circumstances.  Neely v. Commissioner, 85 T.C. 934, 947 (1985). The term "disregard" includes any careless, reckless, or intentional disregard of rules or regulations.  Sec. 6662(c).  An understatement is "substantial" if it exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1) and (2).  Respondent's determination that petitioner is negligent is presumptively correct, and the burden is on petitioner to show a lack of negligence.  See Hall v. Commissioner, 729 F.2d 632, 635 (9th Cir. 1984), affg. T.C. Memo. 1982-337.[18]  The accuracy-related penalty applies unless petitioner demonstrates that there was reasonable cause for the underpayment and that he acted in good faith with respect to the underpayment.  See sec. 6664(c).

---

[18]See supra note 10.

Petitioner has established that he was involved in an active trade or business activity. With respect to the claimed deductions, petitioner provided detailed expense accounts records and credible testimony. Petitioner testified that he relied on his accountant to prepare his 1993 tax return, as petitioner had done in previous years. Reliance on an accountant to prepare tax returns is not sufficient by itself to establish reasonable cause. See Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987). The taxpayer must also show that he supplied the tax preparer with complete and accurate information sufficient to properly prepare the return, that the incorrect return was the result of the tax preparer's mistakes, and that the taxpayer in good faith relied on the advice of a competent tax preparer. See Pessin v. Commissioner, 59 T.C. 473, 489 (1972).

While petitioner may have provided his accountant with detailed records, the expenses listed in the records were not allowable as business deductions. Petitioner has not alleged that his accountant made any mistakes in preparing petitioner's 1993 tax return. Additionally, petitioner's insistence that he is still the owner of the rental equipment is troubling in light of the substantial evidence to the contrary. Based on the evidence in the record, petitioner has failed to demonstrate

reasonable cause or a lack of negligence.  Accordingly, we hold that petitioner is liable for the accuracy-related penalty.

<u>Decision will be entered</u>

<u>under Rule 155</u>.